# CASES

## ARGUED AND DETERMINED IN THE

# SUPREME COURT OF THE STATE OF GEORGIA,

## AT SAVANNAH, JANUARY TERM, 1858.

Present—JOSEPH H. LUMPKIN,
CHARLES J. McDONALD, } Judges.
HENRY L. BENNING,

24 17
f113 264
24 17
,124 814

CHARLES GANAHL, surviving partner, plaintiff in error, *vs.* JAMES SHORE, defendant in error.

[1.] Where the judgment of the Court below is not excepted to generally, but upon grounds which are specified, the bill of exceptions cannot be amended so as to include other grounds, upon the hearing of the cause.

[2.] Books of accounts in all occupations which require books to be kept, are admissible in evidence, to prove the usual subjects of book charges in such business.

[3.] The tendency of the judicial as well as the Legislative mind is to widen instead of to restrict the rules for the admissibility of evidence.

Complaint on account, in Chatham Superior Court. Decision by Judge FLEMING, January Term, 1857, on application for certiorari.

This case was heard by Judge FLEMING upon the following statement of facts:

This was a statutory action of account, brought in the City Court of Savannah, against Charles Ganahl, as surviving partner of Philo H. Wildman, by James Shore, for the wages of himself and wife as employees at the hospital of Wild-

2   VOL. XXIV.

man & Ganahl, from February 3d, 1853, to June 1st, 1854. The plaintiff proved by the answers of the defendant to interrogatories under the statutes to compel discoveries at common law, that the defendant was the surviving partner of Wildman; that the plaintiff and his wife were in the employ of Wildman & Ganahl from the 3d of February, 1853, to the 15th of May, 1854, in the capacity of stewards of a hospital; that he was to receive therefor twenty dollars per month for the first part of the time, then twenty-five, and towards the end of the term thirty-five dollars, and also board and lodging, for the services of himself and wife.

The defendant proved by A. A. Smets, that he had had dealings with Wildman & Ganahl, as proprietors of the hospital, and found their charges correct. The books of account of Wildman & Ganahl were then offered in evidence, after the suppletory oath of the defendant. To which plaintiff objected, and the Court sustained the objection. The defendant then introduced the evidence of Dr. Cullen, taken by commission, who proved that he resided as resident surgeon and as a student in the hospital, under Drs. Wildman & Ganahl, from March, 1853, to about March, 1854; that he recognized the book of accounts, that it contained the accounts of the hospital of Wildman & Ganahl, and the charges against the patients and others; that he had been an eyewitness to business transactions between Wildman and Shore; had seen Wildman pay Shore wages for himself and wife, had heard Shore ask Wildman for wages, Wildman would then open this book of accounts, make out a check, hand it to Shore, and then proceed to charge it on Shore's account; that this was done repeatedly; that the account of Shore was on page 17 of the book. He recognized the book from his knowledge of Dr. Wildman's hand-writing, and from having seen him write on that page frequently; that the entries in Shore's account were all in Wildman's hand-writing, with the exception of one dated December, 22d, 1853, and another dated January 12th, 1854; that he had seen Wildman give

Shore checks on the bank; Shore gave no receipts; that the book was accessible to Shore, and witness had seen Shore examining it, and that Shore was steward of the hospital.

To the cross interrogatories he testified that he recognized the book of accounts from its containing his own hand-writing; that on the 3d of March, 1853, he saw Wildman pay plaintiff wages by giving him the check to the amount set forth in the account, that is $20; that he had seen Wildman pay Shore at other times, but did not remember the dates or amounts; that he recognized Shore's account in the book from the fact that Shore's name appears in the account by the particular item of March 3d, 1853, and by other entries which he remembered generally. The defendant then moved to introduce page 17, (a copy of which is annexed,) of the book of accounts, as evidence of admissions of Shore, to which plaintiff objected, and the Court sustained the objection; whereupon defendant excepted, and after verdict found against him, filed his exceptions as follows:

1st. Because the Court refused to admit the books of Wildman & Ganahl as evidence before the jury.

2d. Because it refused to admit the Dr. and Cr. account between plaintiff and defendant, as surviving partner of Wildman & Ganahl, kept by P. H. Wildman, and sustained by *aliunde* testimony.

3d. That the Court erred in charging the jury that when the plaintiff had proved the employment, the amount of wages to be given, and the time of service, they must believe that no payment had been made, in default of defendant's producing a receipt, and that the jury must only give credit for the payment actually proved, and for the balance they must find a verdict for the plaintiff.

4th. Because the jury found contrary to law and evidence.

Upon said exceptions and upon petition, the writ of certiorari was issued and the case brought from the City Court,

before his Honor Judge FLEMING of the Superior Court, who, after argument, affirmed the judgment of the City Court.

And counsel for. defendant excepts to said decision and says:

1st. That the Judge erred in deciding that the book of accounts of Wildman & Ganahl was not admissible in evidence.

2d. The Judge erred in deciding that the account of Shore in said book was not admissible in evidence.

Jos. GANAHL & S. P. HAMILTON, for plaintiff in error.

WARD, OWEN, & JONES, for defendant in error.

The following is a copy of Shore's account as extracted from the book of accounts of Wildman & Ganahl, viz:

| | | MR. SHORE, | DR. | | CR. | |
|---|---|---|---|---|---|---|
| 1853. | | | | | | |
| Feb. | 3 | By 1 mos. wages self and wife, | | | $20 | 00 |
| " | 3 | Paid wife check, | $10 | 00 | | |
| " | 16 | To cash paid self, | 10 | 00 | | |
| Mar. | 3 | By 1 mos. wages self and wife, | | | 20 | 00 |
| " | " | To check for wages self and wife, | 20 | 00 | | |
| Apr. | 3 | By wages self and wife, | | | 20 | 00 |
| " | 5 | To cash for wages self and wife, 3d inst., | 20 | 00 | | |
| May | 3 | By wages self, wife and little girl, | | | 25 | 00 |
| " | 3 | To cash for wages to 3d May, | 25 | 00 | | |
| June | 3 | By wages self, wife and little girl to date, | | | 35 | 00 |
| " | 27 | To cash in full to 3d inst., | 35 | 00 | | |
| | | | $120 | 00 | $120 | 00 |
| July | 30 | To cash to wife for wages, | $6 | 00 | | |
| Sept. | 5 | Cash for wages, | 10 | 00 | | |

Ganahl vs. Shore.

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Oct. | 4 | " | " | " | | 20 | 00 |
| " | 19 | " | " | " to wife | | 10 | 00 |
| Nov. | 15 | " | " | " " | | 10 | 00 |
| " | 21 | " | paid May & Co., for harness, | | 10 | 87 |
| " | 25 | " | for wages, | | 100 | 00 |
| " | 25 | " | " | | 45 | 00 |
| Dec. | 8 | " | " to Mrs. Shore, | | 10 | 00 |
| " | 22 | " | " to Shore, | | 10 | 00 |
| 1854. | | | | | | |
| Jan. | 12 | Cash for wages to Shore, | | · 7 | 50 |
| " | 12 | For shrouding and washing Mrs. Wilson, | | | | 8.50 |
| Mar. | 8 | To cash paid per order per Cord, | | 20 | 00 |
| " | 8 | To order saddle, &c., | | 12 | 50 |
| Apr. | 8 | To cash paid Mrs. Shore, | | 8 | 00 |
| " | 8 | To paying Mrs. S.'s bill dry goods at Prendergast's, for 1853, | | 7 | 36 |
| June | 1 | To paying Mrs. S.'s bill at Prendergast's to date, | | 59 | 30 |
| " | 30 | To cash paid self for wages, | | 20 | 00 |
| July | 22 | To cash paid Minis' bill furniture, | | 14 | 50 |
| " | 24 | To cash paid Collins, ewer and basin, | | 1 | 00 |
| Aug. | 5 | To cash paid wife, | | 20 | 00 |

This case being called for trial, counsel for plaintiff in error moved to amend his bill of exceptions, by inserting an additional exception or ground of exception to the judgment of the Superior Court, to-wit: because the verdict was contrary to law and the evidence, which motion the Court refused.

*By the Court.*—LUMPKIN, J. delivering the opinion.

This case originated in the City Court of Savannah and came before the Superior Court upon a writ of certiorari. Upon the hearing, his Honor, Judge FLEMING, affirmed the judgment of the City Court with costs; and to reverse this decision, this writ of error is prosecuted.

It is proposed to amend the bill of exceptions by inserting other grounds than the two originally taken. Had the plaintiff in error excepted generally to the decision of Judge FLEMING, affirming the judgment of the City Court, he would be entitled to be heard upon all the grounds taken in the certiorari. But he did not except to the whole judgment, but excepts specially to the decision upon two grounds only, namely: .that the Court erred, 1st. in holding that the book of accounts of Wildman & Ganahl was not admissible in evidence before the jury; and 2dly, in ruling that the account of Shore in said book was not admissible as evidence. The defendant in error had a right to suppose that the argument in this Court would be restricted to the two errors specified. To let in other grounds now, would be to take the defendant by surprise, and thereby deprive him of the benefit secured by the IXth section of the Act of 1856. That section declares that it shall not be necessary to make any assignment of errors, as heretofore practiced in the Supreme Court, but that in lieu thereof, the case shall be heard upon the errors as set forth in the bill of exceptions, "*which shall be plainly and distinctly therein set forth.*" The bill of exceptions as originally drawn in this case, is in strict conformity with the Act. To allow the amendment would be to make the Act void and of none effect. And a surprise in this Court is the more detrimental because no continuance can be allowed on that account. The defendant, we repeat, had a right to conclude that the plaintiff, by excepting to two of the four grounds on-

ly, was satisfied himself, that the judgment of the Superior Court was right upon the other two.

So much upon the proposition to amend.

Ought the books of Wildman & Ganahl to have been admitted in evidence before the jury?

By the Act of 1843, *Cobb* 275, the books of all persons in the practice of any regular craft, are allowed to go to the jury, in proof of open accounts. If the practice of the Courts is evidence of what the law is, such was the law in this State before the passage of this Act. And we think Judge FLEMING put too limited a construction upon this statute. The word *craft*, as used in the Act, was confined by his Honor to some " manual occupation ; some mechanic art in which the person practicing it may acquire and exhibit dexterity and skill." It means this, to be sure, but why so limit the Act?

On the contrary, we hold that any occupation which makes it necessary for books to be kept as the record of its transactions—the monuments of its daily business, as factories, foundaries, forges, gass-works, banks, factorage, no matter what, if books are required, *ex necessitate rei*, to be kept, these books are to be let in under the law. And if it be inquired for what purpose and to what extent? We say, for the same purpose and to the same extent that a merchant or shop-keeper's books are received in evidence. And that is to prove those matters, which appertain to the ordinary business of the concern, which require to be charged, and which in fact constitute its *res gestæ*.

But it is argued that this rule, broad as it is, does not let in *money* items. And perhaps, in candor, it must be yielded that the decisions in this and other States, especially in times past, rather sustain this doctrine. No such exception, however, seems to be established in England. No reported case from that country, is cited by Judge FLEMING in his opinion, or by counsel in the argument before this Court. In the na-

ture of things, no such principle can be maintained. It would virtually repeal the Act of 1843.

The business of banking is confined almost entirely to money items. So of the books of factors and commission merchants. So of brokers. Large pecuniary advances are made by commission houses to planters, in anticipation of crops. The customer sends an order for a thousand dollars. It is forwarded and charged to the planter's account. True, the factor has the written order, but the cash advanced depends upon the evidence of his books.

Whatever doctrine may have obtained formerly upon this subject, the world is too much in a whirl, there is too much to be done in the twenty-four hours now, to allow of the particularity and consequent delay in the obtainment of receipts, &c., which might at one period have prevailed without prejudice. Corporations, the law says, can only act through their corporate seal. Inforce this doctrine now, and all monied corporations, at least, would be abolished. They draw and endorse bills, and perform through their cashier, or other official agents, all their functions, the same as individuals.

Take the case of a grocery merchant, in one of our towns. His customer gives him a verbal order to buy him a thousand pounds of fodder, or ten barrels of corn. It is done, and the money paid out for the produce, and charged to the customer's account. When this practice is universal over the State, are the books no evidence of these money items! He that so affirms, is a half century behind the age in which he lives. And to get up with it, he must forget the things that are behind and press forward, for it will never stop or come back to him. As soon try to roll back the sun in its daily journey from west to east.

After all, the evidence of books rests upon the character and credit of the keeper of them. Lay the foundation for their introduction, which was done in this case; that is, prove by those who have had dealings with them, that they keep correct books, and there is little mischief to be appre-

Ganahl vs. Shore.

hended.  The credit system of the world, upon which the rapidly developing commerce and civilization of the world, so materially depends, I say this as contradistinguished from the cash system, rests mainly upon the foundation to which I have just referred.  Policy, then, to say nothing of any higher motive, will prompt men to deal honestly.  For otherwise they cannot deal at all.  They destroy their own credit, which in ninety-nine cases out of a hundred, constitutes their whole capital.

For myself, while I am no transcendentalist, or believer in the perfectability of fallen, depraved human nature, still I must think, that this world has been sadly libelled—much more sinned against than sinning.  There is still much left that is *honest* and that may be trusted.  At any rate, let this and all other proof go to the jury for what it is worth.

The book of Wildman & Ganahl was at all times accessible to Shore.  He was seen examining it.  He never made any objections to its correctness.  Dr. Cullen testifies that he had been an eye-witness to business transactions between Wildman and Shore; had seen Wildman pay Shore wages for himself and wife; had heard Shore ask Wildman for wages; Wildman would then open his Book of accounts, make out a check, hand it to Shore, and then proceed to charge it on Shore's account; that this was done repeatedly; that he had seen Wildman give Shore checks on the bank; Shore gave no receipt; that on the third of March, 1853, he saw Wildman pay plaintiff wages by giving him a check for the amount charged in the account of Shore of that date, that is $20; that he had seen Wildman pay Shore at other times, but witness did not remember the dates or amounts.

We ask is all this not proof sufficient to let in the books? Does it not amount to an acknowledgment by Shore of their correctness?  It is said that he was dependent upon his employers for his bread, and hence the motive for his silence. What! to read in the book the proof of his employers' villainy, that they were manufacturing false charges against him, and

to remain for some fifteen months or more in their service! Preposterous!  Though not more so than the fact that these false charges were made and the book left exposed to the inspection of the party defrauded!  Besides it not only appears from the evidence of Dr. Cullen, that the book was the best, but in truth, the *only* evidence in the possession of the parties of the payments made to Shore.

Again, where did Mr. Shore get the items for making out his account for wages, which he pleaded as a set-off, and which corresponds so precisely with the credits entered upon these rejected books of the plaintiffs?   He got them from that very book, and no where else!  The book was very reliable to charge Wildman & Ganahl, but not Mr. Shore!  And that is not all.   In transcribing his account to charge the plaintiffs, he is careful to allow no credit, with one small exception, except such as  could  be abundantly established  by *aliunde* testimony!  Tell me not  of technical rules of  evidence! They have excluded the light of day from the jury box long enough.  Not only open wide doors and windows, but unroof the temples of justice, that all the rays of truth may beam brilliantly upon those who are set for the administration of the law.   Right to the noble, martyred dead, as well as just rebuke to the living, alike demand it in this case!

Judgment reversed.

Benning J., concurring.

McDonald, J. dissenting.

This cause comes before this Court on two assignments of error.

1st. That the Court erred in deciding that the book of accounts of Wildman & Ganahl was not admissible in evidence before the jury.

2d. That the Judge erred in deciding the account of Shore, in said book, was not admissible as evidence.

The members of this Court agree in sustaining the first assignment of error, and reversing the judgment of the Court below, on that ground.

By the Act of 1843, *(Cobb 275,)* physicians are allowed to sue for and recover judgment in the several Courts of law, in this State, on open accounts, in their favor, upon the production and proof of their books of account, in the same manner and on the same terms as is authorized by existing laws, in cases where tradesmen and merchants are parties plaintiffs in said Courts.   Physicians may maintain private hospitals for their own convenience, and the benefit of their patients, and may keep books of account, not only of professional services rendered their patients, but also of proper and legitimate charges against their employees  engaged in waiting on patients, and supporting the establishment.

I cannot concur in the judgment, however, so far as it admits, as a  principle, the  right of the physician to prove, by entries on his books, made by himself, although sustained by the usual proof that he keeps fair and correct books, that he has paid to his employees or others, the  amount of his indebtment to them.

I know of no rule which admits the books of tradesmen or merchants for any such purpose.   In my judgment, the books are no evidence of such payment, no matter by whom kept, except in the single instance where the  creditor keeps the books  and makes the entries.   If the party make the entry himself, it amounts to nothing more than his declaration that he has paid his debt.   If a  clerk  or third person make the entry, it is only hearsay evidence.   If the creditor himself make the entry, it is an admission that he has been paid the amount he has entered against himself.   It is implied by the Act of 1843, that the books of merchants and tradesmen might be admitted to prove open accounts in their favor, under laws existing at that time.

There was no  statute law under which they could be admitted.   It is by no means established that the books, of

themselves, were evidence at common law. *Sir William Blackstone* says, that the penners of the statute *7th Jac.* 1 *ch.* 12, which confines this species of proof (by the books,) to such transactions as happened within one year before the action brought, *seem to have imagined* that the books, of themselves, were evidence at common law. The same learned author declares, that books of account or shop books, are not allowed, of themselves to be given in evidence for the owner; but a servant who made the entry may have recourse to them to refresh his memory; and if such servant be dead, and his hand be proved, the book may be read in evidence; for as tradesmen are often under a necessity of giving a credit without a note or writing, this is, therefore, when accom panied with such other collateral proofs of fairness and regularity, the best evidence that can be produced. He remarks, further, that this dangerous species of evidence is not carried so far in England as abroad. 3 *Bl. Com.* 368

In *Lord Raymond*, 745, it is said, a man's book of accounts is no evidence for him, though it may be against him, for it cannot be better evidence than his own testimony, which is inadmissible.

The Act of the Legislature of 1811, in relation to Justice's Courts, declares, that neither the plaintiff nor defendant shall be permitted to prove his or her account, by his or her own oath, without first making oath in writing, that he or she has no other evidence whereby to establish the same, that is in his or her power to procure. *Cobb,* 642.

Again, the Act of 1842 declares, that neither of the parties shall be allowed to prove their accounts by their own oath, in any sum over thirty dollars. *Cobb,* 653.

Neither merchant nor tradesman can prove his own account in any sum over thirty dollars, and yet, it seems, that his mere entries in books kept by himself, a certainly much inferior grade of evidence, has been admitted to establish his accounts to an unlimited amount. The practice, in this regard, by our Superior Courts, and as affirmed by this Court,

certainly finds no warrant for it in our statutes, or the English common law. The decisions of the Courts of other States are no authority here. If the question were before this Court for the first time, in regard to the admission of merchants' and tradesmen's books as evidence, I should be strongly disposed to sustain the rule of evidence in the English Courts, as I understand it, to-wit: that where the entries are made by the plaintiff himself, they are inadmissible; when made by a servant, or clerk, they then might be used as memoranda only, to refresh his memory as to the sale and delivery of goods; and if he be dead, or if, for any cause, his testimony could not be obtained, that the next best evidence should be produced, proof of his hand-writing, and collateral proof of the fairness and regularity of the books.

I consider that question, however, as settled by the case of *Taylor vs. Tucker*, 1 *Kelly*, 231. The Court held, in that case, that the books of a party kept by himself, and, in that instance much less, an account kept on a loose piece of paper, by the party himself, with the additional proof that the party kept correct accounts, and that that was the only account kept by him, was sufficient evidence to entitle the party to recover an account for lumber sold and delivered. The Court there considered it a rule, *ex necessitate*, to accommodate small dealers who are unable to keep clerks.

Long before the establishment of this Court, the Judges of the Superior Courts adopted the same rule. A case of the sort decided in 1831, twelve years before the Act of 1843, *Martin vs. the adm'r of Fyffe*, is reported in *Dudley*, 16. The Judge before whom that cause was tried, remarks, that merchants' and shop-keeper's books are, by constant practice, received as evidence to prove the sale and delivery of goods, when it is shown that the books offered are of original entry, are in his hand-writing, that he keeps fair books, had had dealings with the person charged, and that he kept no clerk.

The learned Judge who pronounced that judgment said

further, that the rule was an exception our Courts had found it necessary to make, for the cause of truth and justice, and for the relief of those amongst us whose business obliges them to extend credit, but who cannot afford to keep clerks. He repeats, that the testimony is only admitted in any case, as matter of necessity, arising from the want of better. Perhaps the Legislature regarded the constant practice of the Courts, referred to here, as evidence of the law in regard to merchants' and tradesmen's books of account, on the footing of which, by the Act of 1843, it placed the books of physicians. But the Courts then held, that to admit them, under the circumstances stated, was a departure from the rules of evidence, and that it was a rule adopted from the necessity of the case. The exception was made in favor of small dealers unable to keep a clerk, and who were obliged to extend a credit to their customers. The books in such cases were received as evidence of *the sale and delivery of goods, and not of money loaned, or of debts paid, nor of advances in money.* There can be no necessity for a rule of that sort. If a merchant has money to lend and he does it, he should take a note; if he owes a debt and pays the whole or a part of it, he should take a receipt; if a factor advances money for his consigner or other person, he should have an order, and evidence that he has remitted or applied it according to the order, which is always easily attainable. I think that the decisions of the Courts have gone quite far enough, in permitting a plaintiff to give his books, which are nothing more than hearsay, of his own fabrication, in evidence to prove the sale and delivery *of goods.* I cannot sanction a principle, which will allow a party to discharge a debt, *ad libitum,* by a mere entry on his book that he has paid it; or to make another his debtor for cash loaned to any amount, by such entry. I know of no rule of law or evidence that permits it. The book of the plaintiff was offered in this case to prove payments, and I think it was not admissible for that purpose.

But, it is said that the book was open to the examination of the defendant, and he was seen to examine it. He was steward, and it was no part of his business to keep the books He had no power to correct erroneous entries. The witness does not testify that the defendant examined his own account as charged in the book, nor does he testify that the defendant's attention was called by the plaintiff to his account, or that the plaintiff was present when he was looking into the book.

To make the book evidence of the defendant's admission of the account charged therein against him, it should have appeared, either that his attention was called to the account therein by the plaintiff, that he examined and admitted it, or at least did not object to it; or that he had access to the book, and had authority to correct erroneous charges against him, that he saw them and did not correct them; or that he examined his account deliberately, and made no objection thereto when he saw the plaintiff.

There is no evidence in the record that the defendant did not object to the account when he saw the plaintiff. I think that the decision of the presiding Judge in the Court below, who reviewed the decision of the Judge of the City Court, was clearly according to law on this branch of the case, and that his judgment thereon should be affirmed.