## STATE v. HUNT.

(Filed December 23, 1901.)

LICENSES—*Taxation—Emigrant Agent—Acts 1901, Ch. 9, Secs. 84, 104—The Constitution, Art. V, Sec. 3—U. S. Constitution, Art. I. Sec. 8. Clause 3.*

Under Acts 1901, Chap. 9, secs. 84, 104, a tax of twenty-five dollars on emigrant agents or persons engaged in procuring laborers to accept employment in another State is constitutional.

INDICTMENT against Chas. Hunt, heard by Judge *H. R. Starbuck* and a jury, at July Term, 1901, of the Superior Court of FORSYTH County. From a judgment of guilty on a special verdict, the defendant appealed.

*Brown Shepherd,* for Robert D. Gilmer, Attorney-General, for the State.

*Holton & Alexander,* for the defendant.

CLARK, J. The defendant is indicted for acting as "emigrant agent in procuring laborers to accept employment in another State" without having obtained a license as emigrant agent. The special verdict finds that "the defendant has been getting hands to work for the Norfolk and Western Railway Company in the States of Virginia and West Virginia; that he has been engaged in the business of obtaining hands to accept employment in another State," and that on demand he refused to pay said tax.

The statute provides, Laws 1901, Chap. 9, sec. 84: "On every emigrant agent or person engaged in procuring laborers to accept employment in another State, a tax of $25." Section 104, same chapter, prescribes: "Every individual or firm carrying on or conducting either of the trades or business upon which a specific amount of license tax is levied, shall pay

the required license tax for every separate location in which the trade or business is conducted, unless otherwise herein provided," and section 102 authorizes the county to "levy the same tax and no more."

The defendant moved in arrest of judgment on the ground that the act is in violation of the Federal Constitution, because: (1) It is contrary to the Interstate Commerce clause, Art. I, sec. 8, Cl. 3.    (2) That it impairs the privileges of the citizens of one State in other States.    (3) Because it wrongfully affects the functions and operations of the Federal Government.    (4) For "these and other reasons" the act is void.    The points thus presented have been recently decided by the United States Supreme Court.    *Williams v. Fears,* 179 U. S., 270 (10 Dec., 1900).    The Georgia statute there called in question imposed a tax "upon each emigrant agent, or employer or employee of such agents, doing business in this State, the sum of five hundred dollars, for each county in which business is conducted."    It is held, in the opinion by Fuller, C. J., that this tax "upon emigrant agents, meaning persons engaged in hiring laborers to be employed beyond the limits of the State, does not amount to such an interference with the freedom of transit, or of contract, as to violate the Federal Constitution; nor does it deny the equal protection of the laws, because the business of hiring persons to labor within the State is not subjected to a like tax; that these labor contracts are not in themselves interstate commerce, nor is the tax upon such occupation a burden upon such commerce."

The opinion further holds that "the business itself is of such nature and importance as to justify the exercise of the police power in its regulation."    The opinion is so full and complete as to render unnecessary any discussion by us.

The defendant also demurred to the indictment that it was in conflict with the State Constitution in that:    (1) It is not

such a tax as is authorized to be levied by Art. V, sec. 3 of the State Constitution. (2) Because it restricts a harmless occupation. (3) That it prescribes no supervision of the business, and is, therefore, not an exercise of the police power. (4) Because of the unreasonableness of the license fee.

The tax, if regarded as a tax upon a trade or business, is within the terms of section 3, Art. V, of the Constitution of North Carolina. It is not a restriction upon the business any more than any other tax upon trades and professions. That it can also be upheld as an exercise of the police power is decided in the above cited case in 179 U. S. The reasonableness or unreasonableness of the tax is a matter for the Legislature, not for the Courts. Tiedman Police Powers, sec. 101, page 277. It is only when the license fee is exacted solely as a police regulation that the Court can consider whether it is so unreasonable as to amount to a prohibition, and that only as to vocations which can not be prohibited. And in no aspect could we hold this tax to be an unreasonable one in amount. We understand the legislative imposition of "$25 for every separate location in which the trade or business is conducted" to mean each town, city or village where the business is conducted as a separate, distinct, business, requiring the personal attention of the agent or his sub-agent. Only those counties in which such sub-agencies are operated can levy a tax, and then only to duplicate the $25 levied by the State. It does not appear that the defendant operated in more than one county and one town, and indeed the judgment only requires the defendant to pay $50, "the tax he should have paid," and the costs. It is also by section 103 of said Chapter 9, Laws 1901, made the duty of the Sheriff in all cases of conviction for failure to pay the license tax on any business, occupation, etc., to collect before a Justice of the Peace a penalty of $50 for the benefit of the public schools.

The defendant relies principally upon *State v. Moore,* 113

N. C., 697, but that case was decided upon an entirely different state of facts, and, so far as any expressions therein conflict with what is said in the above cited case in the 179 U. S., or with this opinion, it is overruled.

It is a matter of some inconsistency that the defendant, professing to act as agent, representing the Norfolk and Western Railroad Company, should be appealing to this Court as a pauper. From the special verdict it would seem he was not the agent of the company, but a contractor agreeing to find and ship hands for a specified consideration.

No error.

MONTGOMERY, J., concurring. I concur in the opinion of the Court on the single ground that the defendant was exercising a trade, and the act of the Legislature imposing a tax of $25 on that trade was constitutional. Art. V, sec. 3, State Constitution; *State v. Worth,* 116 N. C., 1007. It is a tax, pure and simple. It is found in the Revenue Act, Chap. 9, sec. 84, of the Acts of 1901, and is there called a tax.

DOUGLAS, J., concurring. I concur in the judgment of the Court that the tax is constitutional, because it seems to me to come within the expressions "trades" and "professions" used in section 3, Art. V, of the Constitution. I am not disposed to strictly construe those words as referring only to the "learned professions" which are said to be theology, law and medicine. Such a construction would exclude many occupations that have always been regarded as legitimate subjects of taxation under the form of license. I think the definition most probably contemplated by the Constitution is the following taken from Webster. "A profession is said to be "that of which one professes knowledge, the occupation, *if not mechanical, agricultural or the like,* to which one devotes one's self; the business which one professes to understand, and to follow

44——129

for subsistence." On the other hand, it is said that "trade comprehends every species of exchange or dealing, either in the produce of land, in manufactures, in bills or in money; but it is chiefly used to denote the barter or purchase and sale of goods, wares and merchandise either by wholesale or retail." Neither of these words is equivalent to occupation in its general sense. Therefore, I do not think that a farmer or a carpenter could be taxed as such, although one trading or dealing in the products of either might be liable as a trader. In the case at bar, if the defendant had acted only as the agent of one principal, I would doubt his guilt, but as he appears to have engaged hands for more than one, I think it may be said to be his profession. As he must necessarily travel from place to place to hunt up hands, it seems to me that the tax applies to the county. I do not see any other construction that would be reasonable, and if the law must be construed so as to impose an unreasonable and prohibitory tax, then I think it would be unconstitutional. It does not seem to me to be necessary to interfere with Moore's case. I freely admit that in the sense used in the Federal decisions, this clearly comes within the police power of the States; but the Constitution of this State is equally binding upon us as that of the United States, where there is no conflict, and it is the former which we are now construing.

FURCHES, C. J., dissenting. I do not concur in the opinion of the Court. If Art. V, sec. 3, of the Constitution, authorizes this tax, I see no restriction upon the legislative power of taxation, except taxes on properties, moneys and stocks, which shall be uniform. If it can tax a man for hiring hands to work on a railroad in another State, why not for hiring them to work on such roads in this State? And if it can tax a man for hiring hands to work on a railroad in this State, why can it not tax a man for hiring hands to work in a factory or upon his farm? Indeed, why may it not tax a man who is

"engaged" in farming or carrying on a farm? That is a *business,* and to hire hands is to procure hands. This law provides that "on every emigrant agent or persons engaged in procuring laborers to accept employment in another State," etc. An emigrant agent may be such a calling or business as might be taxed. But, in my opinion, one may engage in employing hands without being an agent, and if he does, I do not believe the Constitution will allow him to be punished as a criminal for so doing.

Under this indictment it was not necessary to show that the defendant was the agent of the Norfolk and Western Railroad Company, to make him guilty; but it was sufficient to show that he procured, employed hands "to work in another State." How many did he have to employ, procure, to make him a criminal, two or *three?* And he is to be liable for this tax and to indictment for "every separate location where it is carried on." What is meant by "every separate location?" Is it every place where he may hire a hand? If so, with the right of the county to duplicate the State tax, it may become larger than that of the Act of 1891, which was declared to be unconstitutional. *State v. Moore,* 113 N. C., 697. It is stated in the opinion of the Court that it means "each town, city or village" where the business is conducted. By what authority this is said I do not know, as neither "town, city, nor village" is mentioned in the act. If the act had said in each county, I would have known what it meant. But when it says in "each locality," I do not know what it means. Nor do I believe a revenue act is a police regulation. It is admitted in the opinion of the Court that, in order to sustain this conviction, it is necessary to overrule *State v. Moore,* *supra.* This I am not willing to do.

COOK, J., concurs in the dissenting opinion.