# Richmond

ROBERT E. COLE V. COMMONWEALTH OF VIRGINIA.

November 11, 1937.

Present, Campbell, C. J., and Holt, Gregory, Browning, Eggleston and Spratley, JJ.

The opinion states the case.

*Anthony J. Baroody, M. J. Fulton, Leon M. Bazile* and *W. Griffith Purcell,* for the plaintiff in error.

*Abram P. Staples, Attorney-General,* and *Ralph H. Ferrell, Jr., Special Assistant,* for the Commonwealth.

BROWNING, J., delivered the opinion of the court.

Robert E. Cole, the plaintiff in error here, was convicted in the police court of the city of Richmond upon a warrant for doing business as a labor agent without first obtaining a license as required by section 183 of the Tax Code of Virginia (Code 1936, Appendix, p. 2450).

Upon an appeal the case was tried in the Hustings Court of the city of Richmond and the accused was again found guilty of the offense charged and a fine of $100 was imposed upon him. From this judgment a writ of error was

awarded by one of the justices of this court, hence the case is before us for review.

It appears from the record that a corporation, styling itself People's Labor Union, Inc., maintained an office, or place of business, at 408 E. Marshall Street, Richmond, Virginia; that its corporate name was displayed upon a sign, which attracted the attention of Sylvester Poston, who was looking for employment as a laborer, for which, alone, he was fitted. Poston met Mr. Cole, who will subsequently be referred to as the defendant, at the front door and asked him for employment. The defendant told him, at first, that he had a job in New York, then he said that he had one in New Jersey which he thought would suit him, after ascertaining that Poston was familiar with farm work. The defendant further told him that the prospective employer in New Jersey wanted a man and his wife, the latter to do domestic work, but that Poston and his wife would each have to pay him $2.00 for union cards. This they did and they were told to be ready to depart for New Jersey on the following Saturday and that tickets would be awaiting them at the bus terminal office. When they arrived at the bus terminal the tickets were given to them. They had been told by the defendant that the cost of the tickets, which was $5.90, would have to be paid after they arrived in New Jersey.

Sylvester Poston testified that the defendant did not inform him that he would have to join the union; that all that was said to him on this subject was that he would have to pay for a card. Virginia Poston said that she knew nothing about joining the union; that the defendant did not ask her to do so. The upshot of the whole matter was that the Postons went to New Jersey bearing a sealed envelope addressed to Mr. Van Bracken, for whom the defendant had told them they were to work at $35.00 a month, for both of them. For the first month's labor they were paid ten cents each and for half of the next month they received $17.00, when they were discharged. How the difference between the cost of the bus transportation between Rich-

mand and New Jersey and the $35.00, the contractual wage for the month, was absorbed does not appear in the record. Perhaps an answer to this inquiry is not necessary to the determination of any issue but the absence of the information causes a wonderment which is quite natural.

The Postons returned to Richmond. They never went back to the People's Labor Union, Inc., nor to Mr. Cole, nor did they receive notice of any meetings of the alleged labor union, or of dues, accrued or accruing, nor did they attend any meetings, conferences or assemblies of the members of such union. The fact is that they were both ordinary laborers, one a farm laborer and the other a domestic servant. Courts may be charged with judicial notice that such laborers engaged in such labor do not usually constitute the elements or personnel of what is known as a "labor union."

A labor union is defined as: "A combination or association of laborers for the purpose of fixing the rate of their wages and hours of work, for their mutual benefit and protection, and for the purpose of righting grievances against their employers." Black's Law Dictionary (3d Ed.), page 1062.

A labor union, or organization, technically speaking, is generally composed of a personnel termed "craft," which is a designation applied to a trade, or occupation, of the kind "requiring skill and training, particularly manual skill combined with a knowledge of the principles of the art; also the body of persons pursuing such a calling." Black's Law Dictionary (3d Ed.), page 474; *Ganahl* v. *Shore*, 24 Ga. 17, 23.

The evidence in the case here does not show that the People's Labor Union, Inc., was of this type or character of organization.

This is made plain by the testimony of the witness S. M. Whitmore, whom the defendant introduced to testify that the People's Labor Union, Inc., is a labor union of the accepted, technical and real type, as a craft. This witness was examined, in part, as follows:

"Q. You tell the Judge the way you have described your railroad organization it is the same as the People's Labor Union?

"A. No, I say the form is pretty much the same. I did not say the type of persons, because skill is skill and unskilled is unskilled. I do not want to give it to you wrong on that; I want to give it to you clean."

The organization with which we are here dealing has incorporated within its firm name the words "labor union" and the purposes of the corporation, as set forth in its charter, are very like the requisites of the purposes of a genuine labor union as heretofore defined, but the name of a thing and its declared purposes are worth little in determining the character of its being when those terms are at antipodes with what it actually and really does. It seems appropriate here to suggest the philosophy of the ancient saying: "Actions speak louder than words."

Without undertaking to delineate the evidence, it is sufficient to say that it cannot be impartially read without the conviction of the inescapable conclusion that the corporation in question is but an employment agency, and that the defendant was its active representative engaged in that business and doing so without the warrant of the license required by the Virginia tax statute, section 183.

When Sylvester Poston appeared at the office of the organization referred to, in Richmond, Virginia, and applied to the defendant for employment, the latter to be the intermediary, he was required to purchase two cards, as has already been said. These are designated as membership cards and bear this certification: "This certifies that Sylvester Poston of Richmond, Virginia, has been duly elected a member of the PEOPLE'S LABOR UNION, INC., and is entitled to all of the benefits thereof."

The card issued to Virginia Poston is similar in all material respects.

These cards are urged as rather irrefutable *indicia* of membership in the character of labor organization within the statutory exemption clause.

As to this, the opinion of the trial court, which is quite as notable for its clearness and soundness as for its brevity, is in these words:

"I am of the opinion that the People's Labor Union, Incorporated, is not such a labor organization as is contemplated by the statute, but, on the contrary, I am of the opinion that it is a corporation whose name bears the word 'Union' and whose object, as borne out by the facts produced here, is for the purpose of getting a fee for securing employees for employers, sometimes in the State, sometimes out of the State, in this particular instance out of the State, and, therefore, under the first and second sections of the statute, I am concluding that the defendant is guilty and fix the fine at $100."

Section 183 of the Tax Code of Virginia, which the defendant was found guilty of violating, provides, in substance, that any person who solicits, hires or contracts with laborers, to be employed by others than themselves, and an agent of such person, except as otherwise provided, shall be deemed a labor agent, and every person who shall conduct such business without a license, shall pay a fine of not less than $100 nor more than $500, and one who engages in the business of a labor agent shall pay therefor annually $500, but if such person engages in the business of an "emigrant agent" he shall pay annually $5,000 for the privilege in each county or city in which he operates.

The term "emigrant agent" is then defined to mean any person engaged in hiring laborers, or soliciting emigrants in this State to be employed beyond the limits of this State, and any person so doing without a license, upon being found guilty, shall pay not less than $100 nor more than $5,000, etc.

After dealing with some provisos and exemptions, not germane here, the last material paragraph of the section is in these words: "This section shall not apply to representatives of labor organizations within the State of Virginia, in cases where, because of need of employment, they may direct their members to employment in other States of the Union."

The first attack made by the defendant upon the rulings of the trial court is alleged error in overruling his demurrer to the amended warrant. The two counts of this warrant are as follows:

### "FIRST COUNT.

"Robert E. Cole, being then and there the agent for Peoples Labor Union, a corporation, did, unlawfully solicit, hire, and contract with, laborers, male and female, to be employed by persons other than himself, without a license to conduct such business as a labor agent.

### "SECOND COUNT.

"Robert E. Cole, being then and there the agent for Peoples Labor Union, a corporation, did, unlawfully engage in the business of an 'emigrant agent' in this State in hiring laborers and soliciting emigrants in this State to be employed beyond the limits of this State, without having first obtained such license as an emigrant agent."

The chief criticism of this warrant is that it does not charge the defendant with any criminal act, or inform him of the nature of the charge. The first count explicitly and unequivocally charges the defendant with conducting the business of a labor agent without having a license to do so. The fact that he is described as the agent for the corporation does not impair the sufficiency of the charge against him.

The second count just as clearly and plainly charges him with unlawfully engaging in the business of an "emigrant agent."

The next basis or ground for the demurrer is the allegation that it shows upon its face that the defendant was the representative of a labor union, as if the concern, which is a corporation, and so described, was a labor organization within the meaning of the exemption clause of the statute. The warrant does not bear the slightest sug-

gestion that the People's Labor Union, Inc., was a "labor organization." The contention is subtle but not sound.

Again, it is urged that the demurrer should have been sustained because the section of the statute involved is invalid and void because it is too indefinite and does not define "laborers," "labor agents" or "labor organizations." It is so indefinite, it is said, that it is not enforceable. This and similar statutes in many jurisdictions have withstood like assaults upon them in the courts too often for this court to be now impressed with this reasoning.

It is suggested in the defendant's brief that not only does the warrant charge that the defendant was the representative of a "labor organization," but that it is requisite for it to do so. We are quite in agreement with the contention of the Commonwealth that it is not necessary for the warrant to deny that the defendant's employer was such an organization. This is unquestionably a matter of defense and the burden is on the defendant to show that he comes within the terms and meaning of the exemption clause. If he occupied such a position of vantage he should have proven it. This he did not do. The evidence shows quite the contrary.

It was said in the case of *Collins* v. *Radford*, 134 Va. 518, 530, 113 S. E. 735, 739: "And, while the rule as generally stated is that exceptions and provisos contained in the enacting clause of the statute must be negatived in a criminal complaint, and those which are not so contained may be omitted as being merely matters of defense, the more accurate statement of the rule is that only such exceptions and provisos as are essential to a description of the offense need be negatived, without reference to their position in the statute."

We think that the demurrer to the amended warrant was properly overruled.

This court held in the case of *Hunton* v. *Commonwealth*, 166 Va. 229, 236, 183 S. E. 873, 876, as follows:

"Taxation being the rule and the exemption therefrom the exception, constitutional and statutory provisions exempting

property from taxation should be strictly construed against the exemption and any doubt should be resolved in favor of the State." *Arcese* v. *Commonwealth*, 160 Va. 116, 124, 168 S. E. 465.

This is equivalent to saying that, though tax statutes are construed in favor of the taxpayer, exemptions from their provisions are strictly construed against him, and if he would avoid this construction as to the exemption the burden is upon him to show that he comes within it. *Jordon* v. *South Boston*, 138 Va. 838, 845, 846, 122 S. E. 265, 267; 2 Cooley, The Law of Taxation (4th Ed. 1924), section 672, pages 1406, 1407.

The evidence in the case before us proves the fact that the defendant is guilty of the charge against him, and he has failed to avoid the consequences by proving that his corporation or organization is a "labor organization" under the provisions of the section which we have been discussing.

Section 183 of the Tax Code is further assailed because it is alleged to offend section 52 of the Constitution of Virginia, which provides that: "No law shall embrace more than one object which shall be expressed in its title."

This question has so often been the subject of judicial determination that it would seem that it should now be at rest. It was held that the general title, "The Tax Code of Virginia," is broad enough to embrace and include any enactment "pertinent, germane, congruous and having natural connection with the laws relating to the assessment and levy of taxes, licenses levied for the purpose of raising taxes and penalties for all violations of the statute covering that subject." *Macke* v. *Commonwealth*, 156 Va. 1015, 1019, 1020, 159 S. E. 148, 149; *Richmond* v. *Pace*, 127 Va. 274, 103 S. E. 647.

It is contended, also, that the statutory section is violative of section 63 of the Constitution of Virginia, which provides that no local, special or private laws shall be enacted for the assessment and collection of taxes. A calm and dispassionate consideration of the section in question will afford a sufficient refutation of this contention. Its terms

apply to all persons engaged in the business to which it refers. The policy of the State with respect to the class of persons taxed is reasonable as a classification and the difference in the license tax upon the two classes of agents has been upheld as a legal exercise of the sovereign power of taxation. The State has the right lawfully to make difficult and hard this species of expatriation.

"Constitutional prohibitions against special legislation do not prohibit classification. A general law in its simplest form embraces all persons and places within the State, but varying circumstances often render it impossible to apply the same rule everywhere and to everybody. But the classification must not be purely arbitrary. It must be natural and reasonable, and appropriate to the occasion. There must be some such difference in the situation of the subjects of the different classes as to reasonably justify some variety of rule in respect thereto. Though an act be general in form, if it be special in purpose and effect, it violates the spirit of the constitutional prohibition. An evasion of the prohibition 'by dressing up special laws in the garb and guise (of general) statutes' will not be permitted. 1 Dill. on Mun. Corp. (5th Ed.) sec. 147, *et seq.*; 1 Lewis' Sutherland on Stat. Construction (2d Ed.) sec. 200. But the necessity for and the reasonableness of classification are primarily questions for the legislature. If any state of facts can be reasonably conceived that would sustain it, that state of facts at the time the law was enacted must be assumed. 1 Dill. Mun. Corp. (5th Ed.) sec. 146; *Polglaise* v. *Commonwealth,* 114 Va. 850, 865, 76 S. E. 897." *Martin's Ex'rs* v. *Commonwealth,* 126 Va. 603, 612, 613, 622, 102 S. E. 77, 80, 724.

The assailant of the statute, charging it to be unreasonable, ununiform, arbitrary and discriminatory, bears the *onus* of showing that the classification involved, as between a "labor agent" and an "emigrant agent," offends in these particulars. He has failed to do this. Argument, however impressive, not having a factual basis, is unconvincing.

"*State Board of Tax Commissioners of Indiana* v. *Jackson,* 283 U. S. 527, 51 S. Ct. 540, 543, 75 L. Ed. 1248, 73 A. L. R. 1464 [75 A. L. R. 1536], is a case in which a license tax on chain stores was involved. The court said: 'The power of taxation is fundamental to the very existence of the government of the States. The restriction that it shall not be so exercised as to deny to any the equal protection of the laws does not compel the adoption of an iron rule of equal taxation, nor prevent variety or differences in taxation, or discretion in the selection of subjects, or the classification for taxation of properties, businesses, trades, callings or occupations.'

" 'One who assails the classification of such a law must carry the burden of showing that it does not rest upon any reasonable basis, but is essentially arbitrary.' *Lindsley* v. *Natural Carbonic Gas Co.,* 220 U. S. 61, 31 S. Ct. 337, 340, 55 L. Ed. 369, Ann. Cas. 1912C, 160."

The above citations are quoted with approval in the case of *Carpel* v. *City of Richmond,* 162 Va. 833, 175 S. E. 316, 318.

It appears settled that the difference between a "labor agent" and an "emigrant agent" affords a reasonable basis for the classification involved in the statute under consideration. *Williams* v. *Fears,* 179 U. S. 270, 21 S. Ct. 128, 130, 45 L. Ed. 186.

The defendant, with fervor, urges that the statute denies to himself and laborers "the equal protection of the laws." He contends it is vicious; it is partial in its operation. This contention is refuted by the holding in *Wilson* v. *Denver,* 65 Colo. 484, 178 P. 17, which is annotated at the end of the case of *Ribnik* v. *McBride,* 277 U. S. 350, 48 S. Ct. 545, 72 L. Ed. 913, 56 A. L. R. 1327, 1344.

In the annotation it is said: "It was held that to include those seeking technical, executive, or clerical positions within an ordinance limiting the fees to be charged by employment agencies obtaining such persons such positions was giving them protection which they did not need, and rendered such an ordinance an unnecessary limitation on their

right to contract freely, and therefore an unauthorized exercise of the police power. It was further held that·the ordinance did not meet the requirement stated in *Lawton* v. *Steele* (1894) 152 U. S. 133, 14 S. Ct. 499, 38 L. Ed. 385. 'First, that the interests of the public generally, as distinguished from those of a particular class, require such interference; and, second, that the means are reasonably necessary for the accomplishment of the purpose, and not unduly oppressive upon individuals.' "

In our opinion the contention as to the statute denying equal protection is untenable.

It is further urged that the statute violates the due process clause of the 14th Amendment of the Federal Constitution and article 1 (Bill of Rights), section 1 of the Virginia Constitution, and that it imposes a burden on interstate commerce. These contentions are conclusively disposed of by the Supreme Court of the United States in the case of *Williams* v. *Fears, supra.*

After an impressive dissertation on the general attributes of personal liberty enjoyed by the citizen under the 14th Amendment, and other provisions of the Constitution, including the right of contract and the right of freedom in the enjoyment of all his faculties, the court says this:

"But this act is a taxing act, by the 2d section of which taxes are levied on occupations, including, by paragraph 10, the occupation of hiring persons to labor elsewhere. If it can be said to affect the freedom of egress from the State, or the freedom of contract, it is only incidentally and remotely. The individual laborer is left free to come and go at pleasure, and to make such contracts as he chooses, while those whose business it is to induce persons to enter into labor contracts and to change their location, though left free to contract, are subjected to taxation in respect of their business as other citizens are.

"The amount of tax imposed on occupations varies with the character of the occupation. Dealers in futures are compelled to pay $1,000 annually for each county in which the business is carried on; circus companies exhibiting in

cities or towns of 20,000 inhabitants or more, $1,000 each day of exhibition; peddlers of cooking stoves or ranges, $200 in every county in which such peddler may do business; peddlers of clocks, $100; and so on."

In the annotation already referred to, 56 A. L. R. 1342, is the following: "And in *Williams* v. *Fears* (1900) 179 U. S. 270, 21 S. Ct. 128, 45 L. Ed. 186 (affirming (1900) 110 Ga. 584, 35 S. E. 699, 50 L. R. A. 685), it was held that a statute imposing a tax upon emigrant agents, which left laborers free to make their own contracts, and restricted the business of inducing them to enter into labor contracts and to change their location only by imposing a license tax upon the business, did not, therefore, constitute an abridgment of the privileges and immunities of citizens. It further held that discrimination against the business of employing laborers to go outside the state, and that of hiring them to work within the state, was not a denial of the equal protection of the laws, and that the statute did not constitute a burden on interstate commerce. To the same general effect are the decisions in *Shepperd* v. *Sumter County* (1877) 59 Ga. 535, 27 Am. Rep. 394; *State* v. *Hunt* (1901) 129 N. C. 686, 40 S. E. 216, 85 Am. St. Rep. 758; *State* v. *Roberson* (1904) 136 N. C. 587, 48 S. E. 595; *State* v. *Napier* (1902) 63 S. C. 60, 41 S. E. 13; *McMillan* v. *Knoxville* (1918) 139 Tenn. 319, 202 S. .W. 65."

Continuing upon the subject of the alleged interference with interstate commerce by section 183 of the Tax Code of Virginia, Mr. Chief Justice Fuller, in *Williams* v. *Fears, supra,* submits this interrogatory, in the course of his opinion:

" * * * Does this law amount to a regulation of commerce among the States? To answer that question in the affirmative is to hold that the emigrant agent is engaged in such commerce, and that this tax is a restriction thereon."

In working out and accentuating a distinction which is appropriate, and quoting from *Hooper* v. *California*, 155 U. S. 648, 655, 15 S. Ct. 207, 39 L. Ed. 297, 300, 5 I. Com. Rep. 610, he continues:

" 'The distinction consists in the difference between interstate commerce or an instrumentality thereof on the one side, and the mere incidents which may attend the carrying on of such commerce on the other. This distinction has always been carefully observed, and is clearly defined by the authorities cited. If the power to regulate interstate commerce applied to all the incidents to which said commerce might give rise and to all contracts which might be made in the course of its transaction, that power would embrace the entire sphere of mercantile activity in any way connected with trade between the States, and would exclude State control over many contracts purely domestic in their nature.'

"The imposition of this tax falls within the distinction stated. These labor contracts were not in themselves subjects of traffic between the States, nor was the business of hiring laborers so immediately connected with interstate transportation or interstate traffic that it could be correctly said that those who followed it were engaged in interstate commerce, or that the tax on that occupation constituted a burden on such commerce." (*Williams* v. *Fears,* 179 U. S. 270, 278, 21 S. Ct. 128, 131, 45 L. Ed. 186, 190.)

Thus the contentions of the defendant have been considered and it is our opinion that no one of them is applicable here, and no one of them impairs the force and effect of the statute.

We may make one further comment and that is that the factual phase of the case has been determined against the defendant by the judge of the trial court, to whom the case was submitted without the intervention of a jury. We, under the familiar rule, are bound by the judgment of the court in that particular, subject to certain exceptions which are not present here.

We are of the opinion that the judgment is clearly right and, accordingly, we affirm it.

*Affirmed.*