# Richmond

## JOE ARCESE, COMMITTEE FOR ANDRINO ARCESE V. COMMONWEALTH OF VIRGINIA.

### March 16, 1933.

Present, All the Justices.

The opinion states the case.

*Harry A. Brinkley,* for the plaintiff in error.

*W. W. Martin* and *Henry R. Miller, Jr.,* for the Commonwealth.

EPES, J., delivered the opinion of the court.

Andrino Arcese, a resident of the city of Portsmouth, Virginia, is a World War veteran, who was totally disabled

while in the service of the United States. Joe Arcese, also a resident of Portsmouth, is his committee, having been appointed by the Hustings Court of that city.

As such committee, Joe Arcese received from the United States a number of payments of money for the benefit of Andrino Arcese. Some of these payments were for compensation allowed Andrino Arcese under the provisions of Part II of the World War Veterans' Act of 1924. (Act Cong. June 7, 1924, ch. 320; 38 U. S. C. A., section 421 *et seq.*). The others were payments made in accordance with the provisions of Part III of that act (38 U. S. C. A., section 511 *et seq.*) under a war risk insurance policy issued to Andrino Arcese.

On January 1, 1927, 1928 and 1929, Joe Arcese, as such committee, had on deposit in bank to an interest-bearing account $6,500, which had been accumulated from deposits of such funds, and also held $3,500 of first mortgage real estate bonds, which had been purchased with a part of the money so received.

Sections 69 and 70 of the Tax Code of Virginia (Acts 1926, p. 955) levy an annual property tax of fifty cents on the $100 of the fair market value of all bonds, notes and other evidences of debt (except bonds of the United States and of the Commonwealth of Virginia and its political subdivisions), and of twenty cents on the $100 of all money on deposit in bank which is not otherwise taxed. In accordance with these sections the $6,500 on deposit in bank and the $3,500 of bonds were assessed in the name of Joe Arcese, committee, for taxation in each of the years 1927, 1928, 1929. The committee refused to pay these taxes on the ground that this money on deposit and these bonds were exempt from taxation by the provisions of the World War Veterans' Act of 1924 as amended (38 U. S. C. A., section 421 *et seq.*).

These taxes were regularly returned delinquent, and the Commonwealth then instituted its action by notice of motion for judgment against the committee to recover the amount

thereof, together with the penalties and interest thereon which are provided for by the statutes of Virginia. The case was submitted to the court without a jury, which entered judgment for the Commonwealth, to which judgment Joe Arcese, committee, has been granted a writ of error.

The only assignment of error is that the court erred in holding that this money on deposit and these bonds were not exempted from taxation by section 22 of the World War Veterans' Act, 1924, (Acts of June 7, 1924, ch. 320, section 22, Title 38, section 454, U. S. C. A.) which reads:

"Section 454. Assignability and exempt status of compensation, insurance, and maintenance and support allowances. The compensation, insurance, and maintenance and support allowance payable under Parts II, III, and IV, respectively, shall not be assignable; shall not be subject to the claims of creditors of any person to whom an award is made under Parts II, III, or IV; and shall be exempt from all taxation. Such compensation, insurance, and maintenance and support allowance shall be subject to any claims which the United States may have, under Parts II, III, IV, and V, against the person on whose account the compensation, insurance, or maintenance and support allowance is payable.

"The provisions of this section shall not be construed to prohibit the assignment by any person to whom converted insurance shall be payable under Part III of this chapter of his interest in such insurance to any other member of the permitted class of beneficiaries."

The plaintiff in error takes two positions. His first contention is that this section of the World War Veterans' Act of 1924 absolutely exempts from taxation, while in the hands of the veteran or while being held for his benefit by any other person, all money received by him under the provisions of Parts II, III, and IV of the act (38 U. S. C. A., section 471, *et seq.*), and also all property purchased with funds so received. In support of this contention he cites to us two Georgia cases which so hold. *Rucker, Tax Col-*

*lector* v. *Merck,* 172 Ga. 793, 159 S. E. 501; *City of Atlanta* v. *Stokes,* 175 Ga. 201, 165 S. E. 270, both of which were decided by a divided court. He also cites to us *Payne* v. *Jordan,* 36 Ga. App. 787, 138 S. E. 262, which holds that land purchased by a veteran with proceeds of war risk insurance is not subject to execution, and to *Wilson* v. *Sawyer,* 177 Ark. 492, 6 S. W. (2d) 825, which holds that compensation paid under Part II of the World War Veterans' Act, 1924, to a guardian of a veteran is not subject to attachment by a creditor of the veteran either while in the hands of the guardian or after it has been paid over to the veteran himself.

His second contention is that, even if this be not true, the above section at least exempted from taxation all funds payable to a veteran under Parts II, III, and IV of the act until they have come into the hands of the veteran; that the committee or guardian of an incompetent veteran is only a hand or agency of the United States government through which to transmit payments to the veteran; that money paid under the act to the committee or guardian has not been paid to the veteran, but is in the course of transmission to the veteran; and that this remains true, though the committee or guardian may have deposited such money in bank or invested it in interest-bearing securities for the benefit of his ward. In support of this contention he cites us to *Manning* v. *Spry,* 121 Iowa 191, 96 N. W. 873.

The Commonwealth makes two contentions. Its first is that Congress did not intend by the language used in the section above quoted to exempt funds payable to a veteran under Parts II, III, and IV of this act from taxation after such funds have been paid to the veteran, but only to exempt them while they remain *payable* by the government to the veteran; that after they have been received by the veteran the exemption no longer applies; and that when such funds have been paid to the committee or guardian of an incompetent veteran they have been paid by the gov-

ernment to the veteran. In support of this contention it cites us to the following cases:

*State ex rel. Smith, Atty. Gen.* v. *Board of Commrs. of Shawnee County*, 132 Kan. 233, 294 Pac. 915, which holds that bonds held by the guardian of an incompetent veteran, which the guardian has purchased with money received by him as compensation allowances to his ward under Part II of the World War Veterans' Act, 1924, are subject to taxation. To this judgment a writ of certiorari was denied by the United States Supreme Court (*State of Kansas ex rel. Boynton, Attorney General* v. *Board of County Commissioners of Shawnee County, Kansas*), 283 U. S. 855, 51 S. Ct. 648, 75 L. Ed. 1462. *State* v. *Wright*, 224 Ala. 357, 140 So. 584, which holds that land purchased for the use of his ward by the guardian of an incompetent World War veteran with the money received by the guardian under the World War Adjusted Compensation Act[1] (act of May 19, 1924, ch. 157; Title 38, section 591, *et seq.*, U. S. C. A.) is subject to taxation. *Martin* v. *Guilford County*, 201 N. C. 63, 158 S. E. 847, 76 A. L. R. 978, which holds that land purchased by a World War veteran with money paid to him by the United States government under Parts II, III, and IV of the World War Veterans' Act, 1924, is subject to taxation. See, also, the dissenting opinion in

---

[1] The World War Adjusted Compensation Act (act of May 19, 1924, ch. 157, as amended by act of July 3, 1926, ch. 751, section 3(a); Title 38, section 591, *et seq.*, U. S. C. A.), contains a similar provision, with reference to payments made to a veteran under that act, which reads:

"Section 618. Benefits exempt from seizure under process and taxation; no deductions for indebtedness to United States.—No sum payable under this chapter to a veteran or his dependents, or to his estate, or to any beneficiary named under Part V of this chapter, no adjusted service certificate, and no proceeds of any loan made on such certificate shall be subject to attachment, levy, or seizure under any legal or equitable process, or to national or State taxation, and no deductions on account of any indebtedness of the veteran to the United States shall be made from the adjusted service credit or from any amounts due under this chapter." (Act of Congress May 19, 1924, ch. 157, section 308, as amended by act of July 3, 1926, ch. 751, section 3(a); Title 28, section 618, U. S. C. A.)

*City of Atlanta* v. *Stokes,* 175 Ga. 201, 165 S. E. 270, at p. 278.

The second contention of the Commonwealth is that Congress is without power to exempt such funds and property purchased therewith from taxation after payment thereof has been made to a veteran. In support of this view it cites to us the dissenting opinion in *City of Atlanta* v. *Stokes, supra,* and to the reasoning in the following cases: *Dyer* v. *City of Melrose,* 197 Mass. 99, 83 N. E. 6, 34 L. R. A. (N. S.) 1215, 125 Am. St. Rep. 330, affirmed 215 U. S. 594, 30 S. Ct. 410, 54 L. Ed. 341; *Union Pac. R. R. Co.* v. *Peniston,* 18 Wall. (85 U. S.) 5, 21 L. Ed. 787; *Willcuts* v. *Bunn,* 282 U. S. 216, 51 S. Ct. 125, 75 L. Ed. 304; *Fox Film Corp.* v. *Doyal,* 286 U. S. 123, 52 S. Ct. 546, 76 L. Ed. 1010; *Plummer* v. *Coler,* 178 U. S. 115, 20 S. Ct. 829, 44 L. Ed. 998. See, also, Cooley on Taxation (4th ed.) vol. 2, p. 1286. This precise point does not seem to have been expressly passed upon by the Supreme Court of the United States, and in the view which we take of this case it is not necessary for us to pass upon it. But the only provisions of the Constitution of the United States which it has been suggested confer such power on Congress are the provisions of Article I, section 8, relating to the power to maintain an army and navy, and to make war; and upon principle this point would seem to be well made. See cases above cited.

As used in the above quoted section of the World War Veterans' Act, 1924, the words "the compensation, insurance, and maintenance allowances payable" are susceptible of either of two constructions. (1) They may be construed as generically descriptive of funds which have their origin in the provisions of Parts II, III, and IV of the act, and as being used to differentiate funds which a veteran shall become entitled to receive, or shall receive, under this act from funds to which he is, or may become, entitled to receive, or has or may receive, from other sources. This construction is particularly apt when the words quoted are viewed as speaking as of the time of their enactment. (2)

They may be construed as being specifically definitive, and as being used to differentiate funds which a veteran is entitled to receive under the act from those which he has received under it. This construction is peculiarly apt when the language of the act is viewed as speaking as of the time it is sought to impose a tax upon, assign, or subject to debts a fund which has its origin in the provisions of the act.

The first construction is the construction adopted by the courts in the cases upon which the plaintiff in error relies. The second construction is the construction adopted by the court in the cases upon which the Commonwealth relies.

■■ In *State ex rel. Smith, Atty. Gen.* v. *Board of Commrs. of Shawnee County,* 132 Kan. 233, 294 Pac. 915, the Supreme Court of Kansas expressly held: (1) That the language "compensation, insurance, and maintenance and support allowance *payable*" as used in the section of the World War Veterans' Act, 1924, here under consideration, means funds which a veteran is entitled to receive from the government under this act in contradistinction to those which he has received from it; and (2) that when a payment has been made to the guardian of an incompetent veteran it has been made to the veteran within the meaning of this act, and is no longer protected by the provisions of the act from taxation, assignment, or subjection to the debts of the veteran. The Supreme Court of the United States denied a writ of certiorari to this judgment (*State of Kansas, ex rel. Boynton, Attorney General* v. *Board of County Commissioners of Shawnee County, Kansas,* 283 U. S. 855, 51 S. Ct. 648, 75 L. Ed. 1462), which necessarily had the effect of affirming the holding of the Supreme Court of Kansas on both of these points.

This seems to us to settle the questions here at issue, and to render useless any discussion of the matter by us. But we may add that we are of the opinion that upon principle the construction adopted by the Kansas court, and affirmed by the United States Supreme Court, is the correct con-

struction. The conclusion might be rested upon this principle alone:

When the language of an act is susceptible of two constructions, one of which grants an exemption from taxation and the other does not, or one of which grants only a limited exemption and the other a complete exemption from taxation, that construction should be adopted which denies or restricts the exemption, unless it be very plain that the construction which grants a complete exemption was that intended by the legislative body which enacted the act.

"Taxes being the sole means by which sovereignties can maintain their existence, any claim on the part of any one to be exempt from the full payment of his share of taxes on any portion of his property must on that account be clearly defined and founded upon plain language. There must be no doubt or ambiguity in the language used upon which the claim to the exemption is founded. It has been said that a well-founded doubt is fatal to the claim." *Bank of Commerce* v. *Tennessee,* 161 U. S. 134, 146, 16 S. Ct. 456, 460, 40 L. Ed. 645.

*Affirmed.*