PRESENT: All the Justices

MILLER & RHOADS BUILDING, L.L.C.

                                            OPINION BY

v.  Record No. 151701                 JUSTICE CLEO E. POWELL

                                             September 15, 2016

CITY OF RICHMOND

FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
Melvin R. Hughes, Jr., Judge

Miller & Rhoads Building, L.L.C. ("MRB") appeals the decision of the trial court ruling

that the City of Richmond's (the "City") Tax Abatement for Rehabilitated Real Estate Program

(the "Partial Exemption"), Richmond City Code §§ 98-149 to -159,[1] does not apply to special

district taxes.

## I.  BACKGROUND

On March 17, 2006, MRB acquired the vacant Miller & Rhoads Building (the

"building").  The building is located in a special service and assessment district of the City.

Thus, in addition to being subject to the city-wide real estate tax, *see* Richmond City Code § 98-

121, the building is also subject to an annual special district tax, *see* Richmond City Code § 98-

---

[1] During the time periods relevant to the present case, the Partial Exemption was codified
at Richmond City Code §§ 98-132 and -135.  However, prior to the trial court's issuance of its
letter opinion, the City repealed these and related sections and amended and recodified the
relevant sections as Richmond City Code §§ 98-149, -152, and -155.  *See* Richmond City
Ordinance 2014-117-90 (May 27, 2014).  Immediately prior to the issuance of the trial court's
letter opinion, the City again recodified its ordinances.  *See* Richmond City Ordinance 2015-224-
218 (May 27, 2015).  Throughout this appeal, the parties have consistently referred to the
ordinance section numbers as amended and recodified by Richmond City Ordinance 2014-117-
90 (May 27, 2014).  As neither party has indicated any textual substantive differences to the
relevant section between these recodifications, the Court will reference the sections as amended
and recodified by Richmond City Ordinance 2014-117-90 (May 27, 2014) to remain consistent
with the parties' arguments.

842.  Both taxes are calculated as a percentage of the property's "assessed evaluation." Richmond City Code §§ 98-121, -842.

MRB planned to rehabilitate the building and develop the property to include a hotel, residential condominiums, retail space and parking.  MRB sought to recoup some of the costs of rehabilitation by seeking a partial exemption from real estate taxes for the property under the Partial Exemption.  Although the City determined that MRB's planned rehabilitation of the building satisfied the basic requirements to qualify for the Partial Exemption, it only applied the Partial Exemption to the base real estate tax; the City refused to apply the partial exemption to the special district tax.

MRB paid the special district taxes under protest and brought an action to correct what it claimed were erroneous assessments.  According to MRB, the City failed to properly calculate and apply the Partial Exemption.  In its prayer for relief, MRB sought a refund of "any amounts of real property tax erroneously charged and paid that are attributable to the erroneous final value."

Prior to trial, the parties stipulated that "[t]he only issue in disagreement is whether the [Partial Exemption] set forth in [Richmond] City Code §§ 98-149, 98-152 and 98-155 also applies to the City's computation of the special district tax as set forth in [Richmond] City Code §§ 98-816 and 98-842."  After hearing argument on the matter, the trial court determined that the Partial Exemption did not apply to the special district tax.  In a letter decision dated June 12, 2015, the trial court explained that, "according to the statutory origin for the imposition of the Special District Tax, its beginning method of calculation and its purposes, and use, [the Special District T]ax is not a real estate tax within the meaning and for the use of the [Partial

2

Exemption]." On August 12, 2015, the trial court issued a final order that incorporated its letter opinion.

MRB appeals.

## II. ANALYSIS

On appeal, MRB argues that the trial court erred in ruling that the special district tax "is not a real estate tax within the meaning and for the use of" the Partial Exemption. In response, the City concedes that the special district tax is, in fact, a real estate tax, but claims that the special district tax is a different type of real estate tax that is not subject to the Partial Exemption. We agree with the City.

Whether the special district tax is subject to the partial exemption is a question of statutory interpretation, which this court reviews de novo. *CVAS 2, LLC v. City of Fredericksburg*, 289 Va. 100, 108, 766 S.E.2d 912, 914 (2015); *see also Renkey v. County Bd. of Arlington*, 272 Va. 369, 373, 634 S.E.2d 352, 355 (2006) (holding that municipal ordinances are interpreted in the same manner as statutes). "In interpreting [a] statute, 'courts apply the plain meaning . . . unless the terms are ambiguous or applying the plain language would lead to an absurd result.'" *Baker v. Commonwealth*, 284 Va. 572, 576, 733 S.E.2d 642, 644 (2012) (quoting *Boynton v. Kilgore*, 271 Va. 220, 227, 623 S.E.2d 922, 926 (2006)).

This Court has repeatedly admonished that, where, as here, a statute is clear and unambiguous, "[t]he question . . . is not what the legislature intended to enact, but what is the meaning of that which it did enact. We must determine the legislative intent by what the statute says and not by what we think it should have said." *Carter v. Nelms*, 204 Va. 338, 346, 131 S.E.2d 401, 406-07 (1963). Thus, the paramount principle of statutory interpretation is "to

3

interpret the statute as written." *City of Lynchburg v. Suttenfield*, 177 Va. 212, 221, 13 S.E.2d 323, 326 (1941).

In the present case, however, the trial court based its decision, not on the plain language of the Richmond City Code, but instead on "the statutory origin," the "beginning method of calculation," the "purposes" and the use of the special district tax. While consideration of these factors may be necessary in certain circumstances, such as when a literal reading of the statute would lead to absurd results, *see Tvardek v. Powhatan Vill. Homeowners Ass'n*, 291 Va. 269, 285-86, 784 S.E.2d 280, 285-86 (2016), it has no place in the present case. Accordingly, the trial court erred in its analysis.

However, "[a]ppellate courts do 'not review lower courts' opinions, but their judgments.'" *Evans v. Commonwealth*, 290 Va. 277, 288 n.12, 776 S.E.2d 760, 766 n. 12 (2015) (quoting *Jennings v. Stephens*, 574 U.S. ___, 135 S. Ct. 793, 799 (2015)). "In instances where a trial court's decision is correct, but its reasoning is incorrect, and the record supports the correct reason, we uphold the judgment pursuant to the right result for the wrong reason doctrine." *Haynes v. Haggerty*, 291 Va. 301, 305, 784 S.E.2d 293, 294 (2016).

> Under the right result for the wrong reason doctrine, "it is the settled rule that how[ever] erroneous . . . may be the reasons of the court for its judgment upon the face of the judgment itself, if the judgment be right, it will not be disturbed on account of the reasons."

*Perry v. Commonwealth*, 280 Va. 572, 579, 701 S.E.2d 431, 435 (2010) (quoting *Schultz v. Schultz*, 51 Va. (10 Gratt.) 358, 384 (1853)).

"This Court may uphold a judgment even when the correct reasoning is not mentioned by a party in trial argument or by the trial court in its decision, as long as the record contains sufficient information to support the proper reason." *Haynes*, 291 Va. at 305, 784 S.E.2d at 294. Moreover, the right for the wrong reason doctrine is especially applicable where, as here, the

question is one of pure statutory interpretation and the parties were on notice that the statutes or statutory scheme was at issue. *See Rives v. Commonwealth*, 284 Va. 1, 3, 726 S.E.2d 248, 250 (2012) (applying the right result for the wrong reason doctrine to a case where the only issue was one of pure statutory interpretation).

In the present case, both parties and the trial court focused primarily on the Partial Exemption and the special district tax, without giving proper consideration to the overarching statutory scheme. This Court has long recognized that "statutes are not to be considered as isolated fragments of law, but as a whole, or as parts of a great connected, homogeneous system, or a single and complete statutory arrangement." *Prillaman v. Commonwealth*, 199 Va. 401, 405, 100 S.E.2d 4, 7 (1957). Thus, in addition to those sections of the Richmond City Code that expressly enact the special district taxes and the Partial Exemption, it is also necessary to consider those sections that provide the overall framework for the levy and collection of special district taxes. In the present case, that framework is provided by Richmond City Code § 98-816.[2]

Richmond City Code § 98-816 states:

> All assessments levied under [Article XIV] shall be added to the
> general real estate levy for the property and shall be subject to the
> following sections of [Chapter 98] governing the levy and

---

[2] Although neither party specifically raised an argument relying on Richmond City Code § 98-816, both parties were fully aware that the overall statutory scheme for levying and collecting special district taxes was at issue in the present case. Indeed, MRB specifically cites to Richmond City Code § 98-816 in support of its argument.

Furthermore, to limit our interpretation of the overall statutory scheme to only those interpretations presented by the parties could have the effect of binding this Court on a question of the law. Just as we are not bound by the parties' concession of law, *see Wright v. Commonwealth*, 278 Va. 754, 760 n.3, 685 S.E.2d 655, 658 n.3 (2009), or the parties' agreement on an issue of law, *see Richmond v. Volk*, 291 Va. 60, 65, 781 S.E.2d 191, 193 (2016), we are not bound by the parties' interpretations of a statute.

collection of real estate taxes and the penalties applicable thereto: sections 98-123, 98-124, 98-127 and 98-129.

It is of particular note that, in establishing the framework for levying and collecting special district taxes, the Richmond City Council cites only four specific sections of Article III of the Richmond City Code to which the special district taxes under Article XIV are "subject to." "In interpreting statutory language, we have consistently applied the time-honored principle *expressio unius est exclusio alterius*," because this maxim "recognizes the competence of the legislature to choose its words with care." *Virginia Department of Health v. NRV Real Estate, LLC*, 278 Va. 181, 187-88, 677 S.E.2d 276, 279 (2009). Under this maxim, "[w]hen a legislative enactment limits the manner in which something may be done, the enactment also evinces the intent that it shall not be done another way." *Grigg v. Commonwealth*, 224 Va. 356, 364, 297 S.E.2d 799, 803 (1982). Stated another way, "the mention of specific items in a statute implies that all items omitted were not intended to be included." *NRV Real Estate*, 278 Va. at 188, 677 S.E.2d at 279.

While this maxim is not applicable in every situation, this Court has recognized that "'[n]o maxim of the law is of more general or uniform application, and it is never more applicable than in the construction and interpretation of statutes.'" *Whitehead v. Cape Henry Syndicate*, 105 Va. 463, 471, 54 S.E. 306, 308 (1906) (quoting Broom's Legal Maxims, pp. 663, 607). *See also Tate v. Ogg*, 170 Va. 95, 103, 195 S.E. 496, 499 (1938) (recognizing that this maxim "is especially applicable in the construction and interpretation of statutes."). Accordingly, this Court has regularly relied on the maxim when interpreting statutes that include enumerated provisions. *See Fisher v. Tails, Inc.*, 289 Va. 69, 75, 767 S.E.2d 710, 714 (2015); *NRV Real Estate,* 278 Va. at 187-88, 677 S.E.2d at 279; *Couplin v. Payne*, 270 Va. 129, 136, 613 S.E.2d 592, 595 (2005); *Jackson v. Fidelity & Deposit Co.*, 269 Va. 303, 313, 608 S.E.2d 901,

6

906 (2005); *Blake Constr. Co. v. Upper Occoquan Sewage Auth.*, 266 Va. 564, 577, 587 S.E.2d 711, 718 (2003); *Smith Mountain Lake Yacht Club v. Ramaker*, 261 Va. 240, 246, 542 S.E.2d 392, 395 (2001); *Government Emples. Ins. Co. v. Hall*, 260 Va. 349, 355, 533 S.E.2d 615, 617 (2000); *Commonwealth v. Brown*, 259 Va. 697, 704-05, 529 S.E.2d 96, 100 (2000); *Board of Supervisors v. Wilson*, 250 Va. 482, 485, 463 S.E.2d 650, 652 (1995); *Turner v. Wexler*, 244 Va. 124, 127, 418 S.E.2d 886, 887 (1992); *Christiansburg v. Montgomery Cnty.*, 216 Va. 654, 658, 222 S.E.2d 513, 516 (1976). Indeed, the Court's dependable application of this maxim promotes consistency and avoids the possibility of an arbitrary standard of interpretation.

Applying this maxim to the present case demonstrates that, by enacting Richmond City Code § 98-816, the Richmond City Council intended for the special district taxes levied under Article XIV to only be "subject to" four specifically mentioned sections under Article III, Chapter 98 of the Richmond City Code. Similarly, by omitting the remaining sections of Article III, Chapter 98 of the Richmond City Code, the Richmond City Council has clearly indicated that it did not intend for special district taxes levied under Article XIV to be "subject to" those omitted sections.[3] Conspicuously, the sections providing for the Partial Exemption are included in the omitted sections.[4]

---

[3] It is possible that the Richmond City Council may not have realized the effect such an omission would have on the remaining sections of Chapter 98 of the Richmond City Code. However, we cannot base our decision on such speculation. Indeed, such an approach would require this Court to overlook a bedrock principle of statutory construction: "Where the legislature has used words of a plain and definite import the courts cannot put upon them a construction which amounts to holding the legislature did not mean what it has actually expressed." *Watkins v. Hall*, 161 Va. 924, 930, 172 S.E. 445, 447 (1934).

[4] It is of no consequence that neither Richmond City Code § 98-816 nor the four enumerated sections specifically address the applicability of the Partial Exemption to special district taxes. To include such a requirement would effectively defeat the rationale of the *expressio unius* maxim. Notably, Richmond City Code § 98-816 and the enumerated sections also do not specifically address the applicability of any other sections of Chapter 98. If we were

7

Accordingly, because the special district tax is not subject to the Partial Exemption, the trial court was correct, albeit for the wrong reason, in ruling that the special district tax "is not a real estate tax within the meaning and for the use of the [Partial Exemption.]"

III.  CONCLUSION

For the foregoing reasons, we affirm the decision of the trial court.

*Affirmed.*

JUSTICE KELSEY, with whom CHIEF JUSTICE LEMONS and JUSTICE McCLANAHAN join, dissenting.

The City of Richmond encourages rehabilitation of historic properties through the use of a "partial exemption" from "taxation of real estate."  Richmond City Code § 98-149 (2004).  *See generally id.* §§ 98-148 to -159.  In a different section of the Richmond City Code, the City imposes a "special district tax" on certain properties in designated districts to fund services and projects benefitting the properties in those districts.  *See id.* §§ 98-841 to -843.

The City persuaded the trial court that a special district tax on real estate is not a real estate tax for purposes of the partial-exemption statute.  The majority does not directly address this issue.  Instead, persuaded by an argument raised entirely on its own, the majority concludes the trial court was right for the wrong reason.  I respectfully suggest the trial court and the majority have both reached the wrong result for independently wrong reasons.

I.

In 2006, Miller & Rhoads Building, L.L.C. ("MRB") purchased a vacant building known as the Miller & Rhoads Building in downtown Richmond.  The property was subject to the city-

---

to include such a requirement, then there would be no reason to enumerate any sections, because, absent a specific reference to their applicability, all of the unenumerated sections would still apply.  Thus, including such a requirement would result in Richmond City Code § 98-816 serving no purpose other than to indicate that the special district taxes are to be "added to the general real estate levy for the property."

8

wide base real estate tax, *see* Richmond City Code § 98-121, as well as a special district tax, *see id.* § 98-842 (imposing "special assessments" on "all real estate subject to real estate taxation located within the boundary described in 98-841" as the "Downtown General Special Service and Assessment District").

Both taxes are calculated as a percentage of the property's "assessed evaluation." *Id.* §§ 98-121, -842. Both taxes, when unpaid, become liens on the property. *See id.* §§ 98-127(d) (classifying unpaid base real estate taxes as "delinquent"), -142 (allowing for judicial sale following nonpayment of delinquent taxes), -816 (incorporating levy and collection provisions applicable to the base real estate tax to special district taxes).

MRB invested millions of dollars rehabilitating and developing the vacant building into a hotel, retail space, parking facility, and residential condominiums. MRB then applied for the "partial exemption" from real estate taxes set forth in Richmond City Code §§ 98-148 to -159, a tax-exemption scheme designed to encourage the revitalization of old and sometimes dilapidated properties within the City. The City refused to apply the partial exemption to the special district tax, claiming that it was not a real estate tax within the meaning of Richmond City Code §§ 98-148 to -159. The trial court agreed with the City and held that the special district tax was not a "real estate tax" for purposes of the partial exemption. J.A. at 129.

II.

MRB argues on appeal that the trial court erred as a matter of law in not applying the partial-exemption ordinance to the special district real estate tax. I agree.

A.

Code § 58.1-3221(A) authorizes local governments to "provide for the partial exemption from taxation of real estate on which any structure or other improvement . . . has undergone

9

substantial rehabilitation, renovation, or replacement." Acting on this grant of power, the City enacted Division 2.1 of the Richmond City Code, titled "Partial Exemption of Rehabilitated Structures from Real Estate Taxation." Section 98-149 states that a "partial exemption is hereby provided from taxation of real estate" on qualifying property. Section 98-152 explains how, to the extent pertinent here, the exemption works: A taxpayer qualifying for "partial exemption of real estate taxes . . . shall receive a credit in the amount of the difference in taxes computed upon the base value and the initial rehabilitated assessed value of the property."

The operative phrases in the Richmond City Code include "Real Estate Taxation" in the title of Division 2.1, "taxation of real estate" in section 98-149, and "real estate taxes" in sections 98-152 and -155. The question in this case is rather simple: Is a special district tax on real estate under section 98-842 a tax on real estate under sections 98-149, -152, and -155? It is difficult to see how the answer could be anything other than "yes." The City, however, advances several reasons why we should doubt this answer. I find none persuasive.

### 1.

The City contends that the "purpose" of the special district tax "would be frustrated" if the partial exemption were applied to it. *See* Appellee's Br. at 4, 7-11. The "purpose" of the partial exemption would also be defeated, the City adds, if it were applied to the special district tax. *Id.* at 11-12. The City insists that the partial exemption "was never intended" to apply to the special district tax. *Id.* at 12. That is important, the City urges, because "[t]he purpose for which a statute is enacted is of primary importance in its interpretation or construction." *Norfolk S. Ry. v. Lassiter*, 193 Va. 360, 364, 68 S.E.2d 641, 643 (1952).

I agree that purpose and intent are crucial guides to any legitimate model of judicial interpretation. The fault line in this debate, however, is the method by which judges discover

10

them.  The Virginia tradition has always been to ask "not what the legislature intended to enact, but what is the meaning of that which it did enact.  We must determine the legislative intent by what the statute says and not by what we think it should have said."  *Carter v. Nelms*, 204 Va. 338, 346, 131 S.E.2d 401, 406-07 (1963).[1]  I thus would not inquire as to "what the legislature meant; we ask only what the statute means."  *Tvardek v. Powhatan Vill. Homeowners Ass'n*, 291 Va. 269, 277 n.7, 784 S.E.2d 280, 284 n.7 (2016) (quoting Oliver Wendell Holmes, *The Theory of Legal Interpretation*, 12 Harv. L. Rev. 417, 419 (1899)).[2]

Following this tradition, "[i]t is our duty to interpret the statute as written and when this is done our responsibility ceases."  *City of Lynchburg v. Suttenfield*, 177 Va. 212, 221, 13 S.E.2d 323, 326 (1941); *see also Continental Baking Co. v. City of Charlottesville*, 202 Va. 798, 805, 120 S.E.2d 476, 480 (1961).  Because we "can only administer the law as it is written," *Coalter v. Bargamin*, 99 Va. 65, 71, 37 S.E. 779, 781 (1901), the interpretative principle that precedes all others is that "courts must presume that a legislature says in a statute what it means and means in a statute what it says there," *Arlington Cent. Sch. Dist. Bd. of Educ. v. Murphy*, 548 U.S. 291, 296 (2006) (citation omitted).

Applying these principles to our interpretation of the Richmond City Code, I would use its plain meaning as the winnowing fork separating the exegetical intent (the meaning revealed

---

[1] *See also Fairbanks, Morse & Co. v. Town of Cape Charles*, 144 Va. 56, 63, 131 S.E. 437, 439 (1926) ("The object of interpretation of statutes is to ascertain the meaning of the legislature.  Primarily this is to be obtained from the language used.").

[2] I acknowledge that textualism has its limits.  While undisturbed by the mere banter of policy debates, a literal reading of a statute should not be adopted when it "would result in a manifest absurdity."  *Butler v. Fairfax Cty. Sch. Bd.*, 291 Va. 32, 37, 780 S.E.2d 277, 280 (2015).  That said, "the anti-absurdity principle — understood in its legal sense — serves only as an interpretative brake on irrational literalism.  This fail-safe applies in situations in which a purely literal reading forces the statutory text into an 'internally inconsistent' conflict or renders the statute 'otherwise incapable of operation.'"  *Tvardek*, 291 Va. at 280, 784 S.E.2d at 285-86 (quoting *Butler*, 291 Va. at 37, 780 S.E.2d at 280).

by the words themselves) from its eisegetical intent (the meaning interpolated into the text by the interpreter). Here, the controlling text is unambiguous: The partial exemption applies to "Real Estate Taxation," Richmond City Code ch. 98, art. XIV, div. 2.1; "taxation of real estate," *id.* § 98-149; and "real estate taxes," *id.* §§ 98-152, -155. The City Attorney concedes, correctly so, that the special district tax is a "tax on real estate." Oral Argument Audio at 24:00 to 24:13; *see also id.* at 16:50 to 16:55; 23:34 to 23:50; Appellee's Br. at 1, 7.[3] From this, the conclusion is as simple as it is clear: The partial exemption applies to real estate taxes, and thus, it applies to the special district tax on real estate. Whatever unexpressed purpose might lurk beneath the text of the ordinance, it has no effect on the meaning evident from the text itself.

2.

The City also points out that the special district tax on real estate is very different from the city-wide base real estate tax. While both involve a tax rate calculated as a percentage of the property's assessed value, the taxes serve different interests in the public financing of a municipality. No doubt this is true. The general real estate tax raises general revenue that can be spent on any legitimate governmental purpose. *See* Code §§ 58.1-3200 *et seq.* The special district tax on real estate raises revenue that is placed in segregated accounts for specific services and projects within designated areas of the City. *See* Code § 15.2-2403(6); Richmond City Code § 98-843. The issue before us, however, is not whether a general real estate tax is different from

_____

[3] Whether a levy or assessment constitutes a tax "must be determined from the natural and legal effect of the language used in imposing the charge, [as well as] the language and provisions of any constitutional or statutory provisions involved." *City of Richmond v. Richmond-Petersburg Turnpike Auth.*, 204 Va. 596, 598, 132 S.E.2d 733, 735 (1963). I agree with the parties in this case that the special district tax is generally a tax and, given its "natural and legal effect," is specifically a tax on real estate. *Id.*; *accord City of Richmond v. Eubank*, 179 Va. 70, 77, 18 S.E.2d 397, 400-01 (1942) (holding that a sewer tax, which burdened real estate and was made a lien when unpaid, constituted a real estate tax).

12

a special real estate tax, but whether both are real estate taxes as a matter of law. Because they are, any differences between them are immaterial.

3.

The City's final effort to dissuade us from applying the plain meaning of the partial-exemption ordinance is to argue that the partial exemption, if applicable, would "prevent" the City from exercising its right to calculate the special district tax on the "full assessed value of MRB's property." Appellee's Br. at 6. True enough. But that is exactly what tax exemptions, credits, abatements, and any number of other such tax-reducing measures are meant to do. I recognize that the City has the statutory authority to "base the tax on the full assessed value," Code § 15.2-2403(6), when no exemption is applicable. But that truism does nothing to address whether the partial exemption is applicable.

The City enacted the partial exemption "to encourage the redevelopment of property." Appellee's Br. at 1. Nothing in the enabling statutes required the City to enact the partial exemption ordinance. As MRB points out, the City could have excluded the special district tax on real estate from the partial exemption ordinance.[4] For whatever reason, the City chose not to do so. The partial exemption does not conflict with the special district tax on real estate any more than it conflicts with the city-wide base real estate tax. Both taxes, when applicable, merely serve as the default rules for real estate taxation. The partial exemption merely does what its plain text confirms it is intended to do: partially exempt a portion of the assessed values from

---

[4] On brief, MRB states that it "has never claimed that the City cannot exclude the special district tax from the abatement program, or suggested that the City is required under Virginia Code § 15.2-2403(6) to apply the abatement to the special district tax." Reply Br. at 2. "The issue is not what the City *might* have done and what it lawfully *can* do. Rather, the issue is what the City in fact did." *Id.* (emphases in original).

real estate taxation.[5]  This is not a situation in which two statutes irreconcilably conflict, with neither capable of accommodating the existence of the other.[6]

B.

Our colleagues in the majority conclude that the "subject to the following" clause in Richmond City Code § 98-816 implicitly forbids the partial exemption from applying to a special district real estate tax.  The City did not make this argument in the trial court, its petition for appeal, its opening brief, its reply brief, or during oral argument.

Underlying the majority's view is the negative-implication canon, *expressio unius est exclusio alterius*.  When used contextually, it is a valuable tool of statutory construction.  Its applicability, however, "depends on the particular circumstances of context."  Reed Dickerson, The Interpretation and Application of Statutes 234-35 (1975).[7]  "Virtually all the authorities who discuss the negative-implication canon emphasize that it must be applied with great caution,

---

[5] The City also relies on the maxim that tax exemptions are to be narrowly construed.  In Virginia, however, that principle applies only when the text of the exemption is ambiguous. *Commonwealth v. Community Motor Bus Co.*, 214 Va. 155, 157, 198 S.E.2d 619, 620 (1973) ("When statutes are ambiguous we resort to the rules of statutory construction for guidance in determining legislative intent.  Statutes granting tax exemptions are construed strictly against the taxpayer.  When a tax statute is susceptible of two constructions, one granting an exemption and the other not granting it, courts adopt the construction which denies the exemption." (citations omitted)); *see also Solite Corp. v. County of King George*, 220 Va. 661, 662-63, 261 S.E.2d 535, 536 (1980); *Commonwealth v. Manzer*, 207 Va. 996, 1000, 154 S.E.2d 185, 189 (1967); *Arcese v. Commonwealth*, 160 Va. 116, 124, 168 S.E. 465, 467 (1933).  That is not the case here.

[6] For similar reasons, I find no significance in the City's observation that assessments under the special district tax "shall be added to the general real estate levy for the property." Richmond City Code § 98-816.  It does not follow, as the City contends, that the sequencing of these taxes necessarily implies that the partial exemption would be applicable to the general, but not the special, real estate tax.  *See* Appellee's Br. at 6 (noting that "[a]n Abatement is a component of" the general real estate levy and that the partially exempted amount is "added on top of th[e] total assessed value").  Because both are real estate taxes, the partial exemption applies to both.

[7] *See generally* Roland Burrows, Interpretation of Documents 67 (1943) (exhorting that the negative-implication canon, particularly when applied to statutes, "must be treated with caution," given its capacity, when misused, to contort context).

14

since its application depends so much on context." Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 107 (2012).

Given the "great caution" needed for a careful application of the canon, Henry Black of Black's Law Dictionary warned against using it as "a Procrustean standard to which all statutory language must be made to conform." Henry Campbell Black, Handbook on the Construction and Interpretation of the Laws § 72, at 219-20 (2d ed. 1911). The maxim is "useful only as a guide in determining the probable intention of the legislature." *Id.* Thus, "if it should be clearly apparent . . . that the legislature did not in fact intend that its express mention of one thing should operate as an exclusion of all others, then the maxim must give way." *Id.* at 220.

In this case, the negative-implication canon finds no support from the text or context of section 98-816. That section provides in full: "All assessments levied under this article shall be added to the general real estate levy for the property and shall be subject to the following sections of this chapter governing the levy and collection of real estate taxes and the penalties applicable thereto: sections 98-123, 98-124, 98-127 and 98-129."[8] The majority contends that the "subject to the following" clause in section 98-816 conspicuously leaves out any mention of the provisions applying the "partial exemption" to "taxation of real estate." Richmond City Code § 98-149. *See generally id.* §§ 98-148 to -159. It is true that the clause does not mention the partial-exemption provisions. But that is wholly understandable, rather than curiously conspicuous, given that the enumerated sections all relate to the *procedures* governing the levy and collection of taxes and the imposition of penalties for non-payment.

---

[8] Section 98-123 governs the enforcement of liens, creating an expiration of an uncollected lien at "20 or more years," and section 98-124 specifies that such liens shall be released and recorded as "barred and canceled." Section 98-127 sets forth due dates for real estate taxes, requirements for notices of payment, and interest permitted in the event of late payments or nonpayment. Section 98-129 allows for prepayment and installment payments of real estate taxes.

15

Section 98-816 merely specifies *how* special district real estate taxes are to be levied and collected and, in the event of nonpayment, *how* taxpayers should be penalized — not *whether* the special district tax on real estate is "real estate taxation" for purposes of the partial exemption available under sections 98-149, -152, and -155.  Because the latter topic is categorically unrelated to the former, it "may never have struck the draftsman that it needed mention." Burrows, *supra* note 7, at 67.[9]  This is a critical flaw in the majority's reasoning because the negative-implication canon "properly applies only when the *unius* (or technically, *unum*, the thing specified) can reasonably be thought to be an expression of *all* that shares in the grant or prohibition involved."  Scalia & Garner, *supra*, at 107.  The canon does not apply to matters that "go beyond the category to which the negative implication pertains."  *Id.* at 108.

The majority views my reasoning as inconsistent with the maxim that courts cannot interpret a statute to say that "the legislature did not mean what it has actually expressed."  *Ante* at 7 n.3 (quoting *Watkins v. Hall*, 161 Va. 924, 930, 172 S.E. 445, 447 (1934)).  That criticism misses the mark.  The interpretative debate in this case is not over what the section 98-816 *literally says*, but what can be legitimately inferred from what it *does not say*.

What section 98-816 "actually expressed," *id.*, is what it actually said:  The special district tax is "subject to" certain provisions governing levy and collection procedures.  But what it does not say is that the special district tax is *only* subject to these provisions and that no other provision in the Richmond City Code applies to special district taxes.  Moreover, nothing in section 98-816 makes the counterintuitive statement that the special district tax on real estate should not be considered "real estate taxation" for purposes of the partial exemption available under sections 98-149, -152, and -155.  That conclusion is inferred by the majority based solely

---

[9] It also never struck the City Attorney that it needed to be mentioned.  As noted earlier, at no point in the trial court or on appeal has the City advanced this argument.

16

on the negative-implication canon. It is this extra-literal meaning interpolated into the text by the majority that I find unpersuasive.

I similarly do not agree that my rejection of the negative-implication canon here means that "there would be no reason to enumerate any sections, because, absent a specific reference to their applicability, all of the unenumerated sections would still apply." *Ante* at 7 n.4. By its very nature, the negative-implication canon only excludes unmentioned provisions within the *contextual reach* of the enumerating provision. Context, not abstracted logic, is the limiting principle. The fact that the canon would not exclude an unrelated provision (that is, one outside the enumerating provision's contextual reach) does not mean that it would not exclude related provisions within its reach.

In short, the "subject to the following sections" clause in section 98-816 addresses how special district real estate taxes are to be levied and collected and, in the event of nonpayment, how taxpayers should be penalized. Section 98-816 does not address whether the special district tax on real estate is "real estate taxation" for purposes of the partial exemption available under sections 98-149, -152, and -155. Nothing in the text, syntax, or context of section 98-816 or any of its incorporated-by-reference provisions says anything about the amount of the special district tax added to the general levy or the applicability of the partial exemption to that amount. It is not at all odd, therefore, that section 98-816 does not specifically incorporate by reference the partial exemption available under sections 98-149, -152, and -155. To the contrary, it would have been odd if it had done so.

## III.

By its plain terms, the partial exemption applies to real estate taxes. *See* Richmond City Code §§ 98-149, -152, and -155. The special district tax imposed by section 98-842 is a real

17

estate tax.  The partial exemption thus applies to the special district tax.

I respectfully dissent.