COURT OF APPEALS OF VIRGINIA

Present:    Judges Fulton, Causey and Lorish
Argued by videoconference

ALICE MINIUM

v.          Record No. 0157-24-2

DAVID R. HINES, IN HIS OFFICIAL CAPACITY
  AS SHERIFF FOR HANOVER COUNTY, ET AL.

OPINION BY
JUDGE JUNIUS P. FULTON, III
FEBRUARY 25, 2025

FROM THE CIRCUIT COURT OF HANOVER COUNTY
Patricia Kelly, Judge

Andrew T. Bodoh (Thomas H. Roberts & Associates, P.C., on
briefs), for appellant.

William W. Tunner (John P. O'Herron; Peter S. Askin;
Daniel-Lester Edwards; Rebecca B. Randolph, Deputy County
Attorney; Leah D. Han, Senior Assistant County Attorney;
*Thompson*McMullan, P.C., on brief), for appellees.

Amicus Curiae: Virginia Coalition for Open Government
(Christopher E. Gatewood; Joshua Heslinga; Threshold Counsel,
PC, on brief), for appellant.

Amicus Curiae: University of Virginia School of Law First
Amendment Clinic (Lin Weeks; Gabriel Rottman; Ian Kalish, on
brief), for appellant.

Alice Minium ("Minium") filed a Virginia Freedom of Information Act request on August

19, 2023, requesting the names, salaries, and other information for all law enforcement officials in

Hanover County.  Hanover County ("the County") provided only limited responses to her request

and subsequently Minium sued the County and Sheriff David R. Hines.[1]  After a bench trial, the

trial court dismissed Minium's petition for writ of mandamus, finding that under Code

---

[1] The County and Sheriff Hines filed a joint responsive brief, and thus any reference to
"the County" includes a reference to Sheriff Hines.

§ 2.2-3706(B)(8) "the public availability of [law enforcement officers'] names would interfere with the ability of the Sheriff to *staff* protective details or undercover operations, now or in the future." We disagree and reverse the trial court.

## I. BACKGROUND[2]

On August 19, 2023, appellant Minium filed a Virginia Freedom of Information Act (VFOIA) request for "a roster of all sworn law enforcement employees on payroll with your agency as of today's date." The request sought the full legal name, job title, rank, assigned unit or division, gender, race, date of first agency hire, date of current hire, fiscal year 2023 salary, fiscal year 2023 overtime and bonus pay, and fiscal year 2023 total compensation for each deputy employed by the County Sheriff's Office. The request asked that the information be provided either in a spreadsheet, or in a collection of documents sufficient to provide the requested information. The County Human Resources ("HR") director Catey Dickensheets initially responded with a spreadsheet containing the requested information[3] excluding the names of all deputies below the rank of Captain. "[T]he names of the court bailiffs, deputies, sergeants and lieutenants employed by the Sheriff's Office are being withheld," Dickensheets wrote, "pursuant to the limitations of" Code § 2.2-3706(B)(10).

Dissatisfied with the response, Minium filed a petition for writ of mandamus on October 23, 2023, based on Dickensheets's failure to provide the names of all the County deputies as requested. On October 27, 2023, HR made a supplementary production that added the names of

---

[2] "Under the applicable standard of review, we view the evidence in the light most favorable to [the County and Sheriff Hines] as the part[ies] who prevailed below." *Bennett v. Commonwealth*, 69 Va. App. 475, 479 n.1 (2018) (citing *Riner v. Commonwealth*, 268 Va. 296, 303, 327 (2004)).

[3] As an example, for each nameless officer, the County provided information along the lines of the following: "Department: SHRF – Sheriff; Division – S001 - Sheriff Admin; Position Title – Deputy Sheriff PT; Annual Salary – $51433.20; Original Hire Date – 07/01/2023; Ethnicity/Race – White; Gender – Male; FY23 Bonus -- #N/A."

deputies below the rank of Captain who were in highly visible public-facing positions. The new list contained approximately 25 names including those from the original production but failed to provide the names of all deputies employed by the County, specifically those below the rank of Captain.[4] Dickensheets and County Attorney Dennis Walter informed Minium that the reason for withholding the names of the officers below the rank of Captain was due to staffing concerns for undercover operations based on Code § 2.2-3706(B)(8).

Minium remained dissatisfied, and the trial court heard oral argument on Minium's petition on October 30, 2023. The trial court took the matter under advisement, later issuing an opinion on December 20, 2023, ruling against Minium, memorialized in a final order on January 9, 2024. In the trial court's view, HR properly responded to Minium's request by providing a response in the format that she requested and that the appellees showed by a preponderance of the evidence that they had properly withheld the disputed names under Code § 2.2-3706(B)(8). The trial court concluded that the disputed names were properly withheld because "nothing prevents someone from conducting further research, finding a picture, and publishing on social media the name and photos of all officers for the department" and that "it would clearly affect the Sheriff's ability to staff undercover operations." Minium timely appealed.

## II. ANALYSIS

"[A]n issue of statutory interpretation is a pure question of law which we review de novo." *VACORP v. Young*, 298 Va. 490, 494 (2020). "Whether documents . . . should be excluded under [VFOIA] is a mixed question of law and fact." *Virginia Dep't of Corr. v. Surovell*, 290 Va. 255, 262 (2015) (first alteration in original) (quoting *American Tradition Inst. v. Rector & Visitors of the Univ. of Va.*, 287 Va. 330, 338 (2014)). "[W]e give deference to the trial court's factual findings and view the facts in the light most favorable to the prevailing

---

[4] The County withheld the names of 220 law enforcement officers out of a total of 245.

part[y]," *id.* (second alteration in original) (quoting *American Tradition Inst.*, 287 Va. at 338-39), but "review issues of statutory interpretation and a circuit court's application of a statute to its factual findings, de novo," *Cole v. Smyth Cnty. Bd. of Supervisors*, 298 Va. 625, 636 (2020) (citing *Surovell*, 290 Va. at 262).

Additionally, "[t]he General Assembly enacted VFOIA to 'ensure[] the people of the Commonwealth ready access to public records in the custody of a public body or its officers and employees.'" *Hawkins v. Town of S. Hill*, 301 Va. 416, 424 (2022) (second alteration in original) (quoting Code § 2.2-3700(B)). "By its own terms, the statute puts the interpretative thumb on the scale in favor of disclosure: 'The provisions of [VFOIA] shall be liberally construed to promote an increased awareness by all persons of governmental activities and afford every opportunity to citizens to witness the operations of government.'" *Fitzgerald v. Loudoun Cnty. Sheriff's Off.*, 289 Va. 499, 505 (2015) (alteration in original) (quoting Code § 2.2-3700(B)). Finally, "[a]ny exemption from public access to records . . . shall be narrowly construed and no record shall be withheld . . . unless specifically made exempt pursuant to this chapter." Code § 2.2-3700(B).

In response to Minium's VFOIA request, the County asserted two exceptions to VFOIA under Code § 2.2-3706(B)(8) and (10). [5] Code § 2.2-3706(B)(8) states:

> Discretionary releases. The following records are excluded from the mandatory disclosure provisions of this chapter, but may be disclosed by the custodian, in his discretion, except where such disclosure is prohibited by law:
>
>    . . . .
>
> Those portions of any records containing information related to undercover operations or protective details that would reveal the staffing, logistics, or tactical plans of such undercover operations

---

[5] The trial court did not address the VFOIA exception enumerated in Code § 2.2-3706(B)(10) and therefore we have no ruling to address as to that exception. As such we only analyze the VFOIA exception enumerated in Code § 2.2-3706(B)(8). Rule 5A:18.

- 4 -

or protective details. Nothing in this subdivision shall operate to allow the withholding of information concerning the overall costs or expenses associated with undercover operations or protective details . . . .

Code § 2.2-3706(B)(8). The County argues that the information requested by Minium would endanger undercover operations by allowing the public to identify law enforcement officials in Hanover County who comprise the pool of officers available for undercover operations,[6] and thus can be excluded from mandatory disclosure. We disagree.

VFOIA offers clear guidance as to personnel records. Code § 2.2-3705.1(1)(ii) states that "[n]o provision" of the VFOIA may be construed to deny public access to, inter alia, "records of the name, position, job classification, official salary, or rate of pay of, and records of the allowances or reimbursements for expenses paid to, any officer, official, or employee of a public body" and Code § 2.2-3706(D) explicitly subjects law enforcement agency personnel records to Code § 2.2-3705.1.[7] Furthermore, in 2017 the statute was amended to specifically provide that it should not be construed to deny public access to the "name" of law enforcement officials. This amendment was made after the exceptions in Code § 2.2-3706(B)(8) and (10) were enacted, making it clear that the legislature did not intend to allow law enforcement agencies to refuse to produce the names of their employees under the exceptions in Code § 2.2-3706(B)(8) and (10). This further supports our conclusion that the names of law enforcement personnel are not exempted from production. *Compare* 2017 Va. ch. 778; 2016 Va. HB 1539, *with* 2013 Va. ch.

---

[6] We accept and adopt the trial court's finding regarding which officers are available for assignment in undercover or protective operations. "[A]ny deputy below the rank of Captain is part of the pool of deputies who may be assigned to serve in an undercover operation or protective detail at any point in time."

[7] "Access to personnel records of persons employed by a public body engaged in emergency medical services or fire protection services, a law-enforcement agency, or an emergency 911 system or any other equivalent reporting system shall be governed by the provisions of subdivision B 9 and subdivision 1 of § 2.2-3705.1, as applicable." Code § 2.2-3706(D).

695; 2012 Va. SB 1264. Under these provisions, we find that the County may not refuse to produce the names of law enforcement officials.

The County's reliance on Code § 2.2-3706(B)(8) is equally unavailing. Code § 2.2-3706(B)(8) allows for the exemption of records "containing information related to undercover operations or protective details *that would reveal the staffing, logistics, or tactical plans of such undercover operations or protective details*." (Emphasis added). "When the language of a statute is unambiguous, we are bound by its plain meaning." *Taylor v. Commonwealth*, 298 Va. 336, 341 (2020). To determine whether statutory language is ambiguous, the Court must consider whether the text can be "understood in more than one way or refers to two or more things simultaneously [or] whe[ther] the language is difficult to comprehend, is of doubtful import, or lacks clearness or definiteness." *Id*. at 342 (alterations in original). The County suggests that this language allows for the exemption of the names of all law enforcement officials who may, at some point in the future, be involved in an undercover operation. We reject this interpretation of the VFOIA exemption for two reasons: (1) we find the phrase "would reveal" to be unambiguous and mean that the information would "make known to others" actually existing "tactical plans," "staffing," or "logistics" of an undercover operation, and (2) the County's interpretation flies in the face of the stated and clear purpose of VFOIA in favor of disclosure. Thus, we look to the plain meaning of the statute. *See* Code § 2.2-3706(B)(8).

The plain meaning of this language requires that any records withheld must (1) be related to undercover operations or protective details *and* (2) reveal staffing, logistics, or tactical plans of those undercover operations. "Related to" is a broad phrase and could encompass any piece of information connected to undercover operations. Thus, our analysis focuses on the phrase "would reveal": whether the information requested "would reveal" details about an undercover

- 6 -

operation. The word "would" can offer different meanings depending on its surrounding context.

> Modal auxiliary verbs may express necessity, uncertainty, ability, or permission. . . . For example, it may be used in an auxiliary function to express preference between alternatives if used with "rather," to express inclination, to express a plan or intention, in the conclusion of a conditional sentence to express volition or intention, or to "express probability or presumption in past or present time."

*Altizer v. Commonwealth*, 63 Va. App. 317, 324 (2014). We have also previously held that in certain contexts, "would" can be synonymous with "could." *Id.* However, in the context of Code § 2.2-3706(B)(8), "would" is not used to express a preference, a plan, or an intention. Instead, "would" is used to express a contingency—e.g., if the information is provided, then undercover operations are revealed. As such, in the case at hand, any information the County withholds must necessarily reveal an undercover operation if it is released to the public. Here, the County has withheld the names of law enforcement officers, while providing all the other information Minium requested, arguing that the names of the officers would hinder staffing of undercover operations by revealing the officers' identities. We disagree.

Hypothetical future undercover operations, by their very nature as "hypothetical," are not yet a reality and consequently do not have "tactical plans," "staffing," or "logistics" to be disclosed. The possibility of the future assignment of 220 officers to undercover duty is merely speculative. This temporal expansion is at odds with the plain meaning of the language employed in the statute—requiring that the information reveal "tactical plans," "staffing," or "logistics" of necessarily existing undercover operations—and conflicts with the purpose of VFOIA to "ensure[] the people of the Commonwealth ready access to public records." Code § 2.2-3700(B). Limited to the facts of this case, we find that this section does not prevent the disclosure of the names of law enforcement officers in Hanover County just because they *might*

be designated for assignment in an undercover operation sometime in the future.  The trial court erred by construing the exemption broadly to include hypothetical undercover personnel staffing by specifically stating "now or in the future."

Therefore, the trial court erred when it denied Minium's writ of mandamus as to the disclosure of the names of law enforcement officials.

### III.  CONCLUSION

The General Assembly explicitly requires that VFOIA "shall not be construed to discourage the free discussion by government officials or employees of public matters with the citizens of the Commonwealth."  Code § 2.2-3700(B).  "By its own terms, the statute puts the interpretative thumb on the scale in favor of disclosure: 'The provisions of [VFOIA] shall be liberally construed to promote an increased awareness by all persons of governmental activities and afford every opportunity to citizens to witness the operations of government.'"  *Fitzgerald*, 289 Va. at 505 (alteration in original) (quoting Code § 2.2-3700(B)).  As such, we reject the trial court's broad interpretation of this VFOIA exemption and reverse its decision.  This case is remanded for proceedings consistent with this opinion.

*Reversed and remanded.*

Lorish, J., concurring.

I write separately to address the other reason we cannot affirm the trial court's ruling: the exception in Code § 2.2-3706(B)(10) does not apply here.

Below, the County invoked two exceptions to VFOIA to justify withholding the names of all County deputies—one is contained in Code § 2.2-3706(B)(8) and the other in Code § 2.2-3706(B)(10). I fully join the majority's conclusion that the exception to disclosure in Code § 2.2-3706(B)(8) does not apply and that Code § 2.2-3705.1(1)(ii) requires the disclosure of the personnel records requested. But I think the majority opinion should also address the County's argument that Code § 2.2-3706(B)(10) covers the withheld records. Because the trial court found that the exception in Code § 2.2-3706(B)(8) *did* apply, it did not rule on the County's alternate argument that these records revealed the "identity of any . . . undercover officer" and therefore could be withheld under Code § 2.2-3706(B)(10). The County urges us to find that the trial court's order dismissing Minium's VFOIA petition was correct given the application of Code § 2.2-3706(B)(10), and to affirm under the right result for the wrong reason doctrine.

The County is correct that "[i]n instances where a [lower] court's decision is correct, but its reasoning is incorrect, and the record supports the correct reason," an appellate court will "uphold the judgment pursuant to the right result for the wrong reason doctrine." *Haynes v. Haggerty*, 291 Va. 301, 305 (2016). This is because we "do 'not review lower courts' opinions, but their *judgments*." *Evans v. Commonwealth*, 290 Va. 277, 288 n.12 (2015) (quoting *Jennings v. Stephens*, 574 U.S. 271, 277 (2015)). The "doctrine is especially applicable" where the "question is one of pure statutory interpretation and the parties were on notice that the statutes or statutory scheme was at issue." *Miller & Rhoads Bldg., L.L.C. v. City of Richmond*, 292 Va. 537, 542-43 (2016).

The exception in Code § 2.2-3706(B)(10) does not save the court's judgment here. That section exempts "[t]he identity of any victim, witness, or undercover officer, or investigative techniques or procedures" from mandatory disclosure. Unlike subsection (B)(8), this subsection specifically exempts the "identity" of "any" undercover officer. The County argues that the evidence showed that "the names withheld were associated with deputies who work undercover" and that no evidence suggested that the deputies with withheld names "take no part in undercover operations." This misstates the applicable burden, as the County was required to present affirmative evidence to prove that the exception applied. Code § 2.2-3713(E) ("[T]he public body shall bear the burden of proof to establish an exception by a preponderance of the evidence.").

Whether a particular officer is "undercover" is a question of fact for a trial court to assess. Here, the County presented no evidence that any particular deputy had worked undercover, was currently working undercover, or was slated to work undercover on a specific operation. The only evidence presented was that all deputies might hypothetically serve as undercover officers in the future. The County, therefore, failed to prove that the exception under Code § 2.2-3706(B)(10) applied.